COMMONWEALTH vs. ROBERT FOSTER.

Bristol.   April 7, 1975. — June 9, 1975.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Plea.   *Constitutional Law,* Plea,   Due process
of law.

Where the record at the time of acceptance of a plea of guilty in a
criminal case failed to show affirmatively that the plea was made
voluntarily and intelligently, the conviction, under *Boykin* v.
*Alabama,* 395 U. S. 238 (1969), must be set aside without consider-
ation of evidence outside that record offered by the Common-
wealth in a postconviction proceeding to show that in fact the plea
was made voluntarily and intelligently.   [101-108]

INDICTMENTS found and returned in the Superior Court
on November 7, 1969.

The cases were tried before *Frank E. Smith,* J., and a
motion for a new trial was heard by him.

The cases were submitted on briefs.

*Francis John Stolarz* for the defendant.

*Lance J. Garth,* Second Assistant District Attorney, for
the Commonwealth.

KAPLAN, J.   Some five months after the decision of
*Boykin* v. *Alabama,* 395 U. S. 238 (June 2, 1969), the
defendant in the present case, Robert Foster, after
standing jury trial for two days in the Superior Court for
Bristol County, changed his pleas and pleaded guilty to
indictments for assault with intent to murder, assault with
intent to commit rape, and unarmed robbery.   The pre-
siding judge, in accepting the guilty pleas, made no in-
quiry whether the defendant was entering his pleas volun-
tarily or knowingly; indeed, the only interrogation at the
time was by the clerk of court, as follows:   Q. "Indict-
ment 31969, assault with intent to murder, how do you

now plead to this indictment?" A. "Guilty." Q. "Defendant pleads guilty. Indictment 31970, as amended, charges you with assault with intent to rape. How do you plead to this amended indictment?" A. "Guilty." Q. "Indictment 31972, unarmed robbery, how do you plead to this indictment?" A. "Guilty." The defendant was sentenced to twelve to fifteen years on the charge of assault with intent to commit rape, with concurrent terms of six tu eight years for the assault with intent to murder, and three to five years for the unarmed robbery.

Basing himself on *Boykin* v. *Alabama, supra,* the defendant on June 28, 1972, filed a petition for a writ of error in this court. The single justice, applying *Earl* v. *Commonwealth,* 356 Mass. 181 (1969), on August 9, 1972, denied the writ but ordered that the case be remanded to the judge who had conducted the trial, to be heard by him as a motion for a new trial. The motion was heard by the trial judge on August 23, 1972. Specifically, the defendant's claim was that the judge had erred in accepting the guilty pleas "without making a record or an affirmative showing that such guilty pleas were intelligent and voluntary." New counsel representing the defendant offered in evidence a copy of the trial transcript, pointing to the portion quoted above. The defendant was not present at the hearing. The Commonwealth called as its only witness the attorney who had represented the defendant at the trial. He testified, over objection and exception, that he had had conversations with the defendant on several occasions, that he had discussed with the defendant the possibility of a life sentence, and that, when he informed the defendant that the district attorney was prepared to recommend a twelve to fifteen year sentence if the defendant would plead guilty, the defendant understood and had no objections and said he wanted to plead guilty and was pleased with that sentence.

On November 17, 1972, the judge denied the new trial motion, taking no action on several requests by the de-

fendant for rulings of law. The judge entered an "Order on Motion For New Trial" in which he stated that during a recess on the third day of trial the defendant's counsel "explained in detail all possible verdicts, the sentences that could be imposed[1] and the position of the District Attorney on the case." The judge said he was satisfied that the defendant's pleas were his own free act. As to *Boykin* v. *Alabama, supra,* the judge said it was inapplicable to the present case because it involved Rule 11 of the Federal Rules of Criminal Procedure, 18 U. S. C. Appendix (1970). The defendant duly excepted to the denial of his motion, and the case is here on a bill of exceptions.

It is evident, in the first place, that the judge misunderstood the *Boykin* case. That case was not one arising from a trial in a Federal court, to which Rule 11 would apply; rather it arose from a trial in a State court. It held that, as a matter of constitutional due process, a guilty plea should not be accepted, and if accepted must be later set aside, unless the record shows affirmatively that the defendant entered the plea freely and understandingly. The trial record in the present case, with its total lack of inquiry at the time of acceptance of the guilty pleas, surely does not in itself begin to disclose voluntariness or understanding. The defendant contends that under *Boykin* this is the end of the matter. The Commonwealth, on the contrary, seeks to maintain the position that no showing need be made contemporaneously with the plea, that the whole showing to meet its burden under *Boykin* may be made after the event in postconviction proceedings — for example, on motion for a new trial — and that such a showing was made here. This issue has appeared in other cases and there is some division of opinion about it, as the cases cited in the

---

[1] The judge's remark to this point goes beyond counsel's actual testimony at the new trial hearing.

margin will indicate.[2]    This court noted such a question but did not answer it in *Huot* v. *Commonwealth*, 363 Mass. 91, 99-100 (1973).

The question naturally centers on the meaning of the *Boykin* case itself.    A defendant, on arraignment on five charges of common law robbery, pleaded guilty to all of them.    This was three days after counsel had been appointed for him.    The presiding judge who accepted the pleas put no questions to the defendant.    Under the law of Alabama, punishment on a guilty plea was for determination by a jury; the jury sentenced the defendant to death.    On direct appeal to the Supreme Court of the United States from the highest Alabama court, which had considered and rejected the argument that the convictions should be set aside because the record did not show a voluntary and knowing plea, the Supreme Court decided that "[i]t was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." 395 U. S. at 242.

The quoted language suggests forcefully that the necessary minimal showing must be made at the time the trial judge accepts the plea.    See *In re Tahl*, 1 Cal. 3d 122, 130 (1969); *People* v. *Taylor*, 383 Mich. 338, 355 (1970); *Commonwealth* v. *Godfrey*, 434 Pa. 532, 533-534 (1969).    But critics have pointed out that *Boykin* may not be dispositive of that point because the court was not confronted with a testing case where the trial record was defective but the State attempted to make the necessary

---

[2] Compare, e.g., *Stinson* v. *Turner*, 473 F. 2d 913 (10th Cir. 1973); *In re Tahl*, 1 Cal. 3d 122 (1969); *People* v. *Taylor*, 383 Mich. 338 (1970); *Higby* v. *Sheriff of Clark County*, 86 Nev. 774 (1970); *Commonwealth* v. *Godfrey*, 434 Pa. 532 (1969) (confined to record of plea session), with, e.g., *McChesney* v. *Henderson*, 482 F. 2d 1101 (5th Cir. 1973), cert. den. 414 U. S. 1146 (1974); *Todd* v. *Lockhart*, 490 F. 2d 626 (8th Cir. 1974); *Wilkins* v. *Erickson*, 505 F. 2d 761 (9th Cir. 1974); *Morgan* v. *State*, 287 Atl. 2d 592 (Maine, 1972); *Ferren* v. *Cupp*, 7 Ore. App. Ct. 353 (1971) (may consider records of other proceedings).

showing in the course of a postconviction proceeding brought by the defendant to set aside the judgment on the plea.[3]

Nevertheless, the direction of thought of the Supreme Court in the *Boykin* case seems to us fairly clear. Two Justices (Harlan and Black, JJ.) argued in their dissenting opinion that the majority should not have set aside the judgment of conviction on the appeal but should have remitted the defendant to a postconviction proceeding in which the State would have an opportunity to show that the pleas were in fact voluntary and deliberated (a proposition that the defendant had not denied, resting as he did on the insufficiency of the record made on the acceptance of the plea). In taking the action they did over the dissenters' explicit contention, the majority were

---

[3] See *Wilkins* v. *Erickson*, 505 F. 2d 761, 764 (9th Cir. 1974); *Walker* v. *Caldwell*, 335 F. Supp. 308, 313 and n. 5 (M. D. Ga. 1971), reversed on other grounds 476 F. 2d 213 (5th Cir. 1973).

Other critics take a different tack. The majority opinion in *Boykin* quotes (395 U. S. at 242) a passage from *Carnley* v. *Cochran*, 369 U. S. 506, 516 (1962), dealing with right to counsel: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." It has been suggested, see *Meller* v. *State*, 431 F. 2d 120, 123 (8th Cir. 1970), cert. den. 400 U. S. 996 (1971); *Walker* v. *Caldwell, supra*, at 311-313; *Ferren* v. *Cupp*, 7 Ore. App. Ct. 353, 356-357 (1971), that the reference to "allegation and evidence" is an implicit adoption by *Boykin* of the view that it is enough if voluntariness and understanding with regard to a guilty plea are shown at a postconviction hearing although it appears from the contemporaneous record that the defendant was not questioned. This is a far reach from the quotation. There was no resort to extraneous proof in the *Carnley* case itself, and the quotation may have had in mind a situation where an offer by the judge to provide counsel and a waiver by the defendant were shown by contemporaneous record, but the defendant later claimed that in fact the waiver was involuntary or unintelligent, and the government could then produce evidence to the contrary. See n. 7, *infra*. It should be recalled, too, that *Carnley* was decided at a time when right to counsel in State prosecutions was not automatic but dependent under *Betts* v. *Brady*, 316 U. S. 455, 462 (1942), on "an appraisal of the totality of facts in a given case."

apparently intending to decide that the necessary showing must be made in the contemporaneous record.

The meaning of the *Boykin* case is further clarified by considering a decision handed down two months earlier, *McCarthy* v. *United States,* 394 U. S. 459 (1969). This dealt with what was to follow upon the failure of a Federal District Court judge to comply with Rule 11 when he was accepting a guilty plea. Rule 11 states that "[t]he court . . . shall not accept . . . [a guilty] plea . . . without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. . . . The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." The problem, then, where the Federal judge had not made the personal inquiries or explored the basis for the plea, was whether the judgment was to be set aside or the government was to have an opportunity in an evidentiary hearing to demonstrate that, notwithstanding the record, the defendant's rights had been respected. The question was put as one involving the supervisory power of the court. In the *McCarthy* decision the court stressed that Rule 11 was intended to assist the trial judge in deciding whether the plea was voluntary and considered, and also to produce a sound contemporaneous record of the factors bearing on the defendant's mental attitude, so as to discourage, or at least speed the disposal of, defendant's postconviction challenges to the judgment. To look beyond a fatally defective record made at the time of sentencing, and allow the government to piece it out by introducing evidence at a later evidentiary hearing, would be unwise as a matter of judicial administration. It would also tend to deprive the defendant of genuine procedural safeguards. For, even taking into account that the burden of proof would be on the government in a Rule 11 case, the defendant in the usual position would be sorely embarrassed by the fact of having made the plea: the "prima

facie case for voluntariness," said the court, that arose from "the defendant's statement that he desired to plead guilty and frequently a statement that the plea was not induced by any threats or promises," "is likely to be treated as irrebuttable . . . where the defendant's reply is limited to his own plaintive allegations that he did not understand the nature of the charge and therefore failed to assert a valid defense or to limit his guilty plea only to a lesser included offense.   No matter how true these allegations may be, rarely, if ever, can a defendant corroborate them in a post-plea voluntariness hearing." 394 U. S. at 469.   Thus the court concluded that a failure to comply with Rule 11 should vitiate the plea and an evidentiary hearing to repair the failure was not to be permitted.

The same attitude and reasoning appear to have underlain the *Boykin* decision which went on constitutional grounds.   The dissenters in *Boykin*, indeed, chided the majority for imposing, in effect, the Rule 11 requirements on the States as a matter of constitutional law.   395 U. S. at 245.   And the majority repeated in substance consideration of policy that had moved the court in the *McCarthy* case: "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.   When the judge discharges that function, he leaves a record adequate for any review that may be later sought (*Garner* v. *Louisiana*, 368 U. S. 157, 173 [1961]; *Specht* v. *Patterson*, 386 U. S. 605, 610 [1967]), and forestalls the spin-off of collateral proceedings that seek to probe murky memories."   395 U. S. at 243-244 (footnotes omitted).[4]   See *In re Tahl*, 1 Cal. 3d 122, 130 (1969);

---

[4] The court's footnote to this passage, appearing after the text word "sought," called attention to some of the States "requiring that an effective waiver of the right to plead not guilty appear affirmatively

*Higby* v. *Sheriff of Clark County,* 86 Nev. 774, 780 (1970).

It has been suggested that to insist on an affirmative showing on the record at the time of sentence is not truly a safeguard of defendants' rights because it leads merely to a mechanical performance in which the judge and the defendant recite formulary words. "The defendant, believing correctly or incorrectly that he will receive a 'bargain' in exchange for his guilty plea, is instructed to, and does, claim total understanding of the charges against him and affirm the total absence of any bargain when questioned by the trial judge." *United States* v. *Frontero,* 452 F. 2d 406, 411 (5th Cir. 1971). But to the extent that this observation may represent truth instead of caricature, what it suggests is not the downgrading of reliance on a contemporaneous record and the encouragement of postconviction proceedings, but rather a continuing effort on the part of trial judges, with the help of counsel, so to direct their questions as to make them a real probe of the defendant's mind. We need not repeat what was said in *Commonwealth* v. *Morrow,* 363 Mass. 601, 604-605 (1973), about the desired character and scope of the questioning.[5] It is not to become a "litany" but is to attempt a live evaluation of whether the plea has been sufficiently meditated by the defendant with guidance of counsel, and whether it is not being extracted from the defendant under undue pressure.

---

in the record." The statutes and decisions cited all refer to a contemporaneous record.

[5] See further on this matter, A. B. A. Standards Relating to Pleas of Guilty, § 1.4 (Approved Draft 1968); Proposed Amendments to Federal Rules of Criminal Procedure for the United States District Courts, approved by U. S. Supreme Court, April 22, 1974, to become effective August 1, 1974, effective date postponed to August 1, 1975, by P. L. 93-361, 88 Stat. 397, July 30, 1974 (text of amendments and Advisory Committee's Notes appear at 62 F. R. D. 271-325 [1974]; Rule 11 amendment at 275-286).

As we find here a "silent record" (*Boykin* case, 395 U. S. at 243) at time of sentence on the questions of voluntariness and understanding,[6] we sustain the exceptions without coming to the question of the conclusion that might be drawn from the evidence offered by the Commonwealth on the motion for the new trial.[7]

Upon the vacation of the judgments, the defendant will face the possibility of the Commonwealth's moving for retrial on the indictments. We note that retrial might result in severer sentences than those imposed on the guilty pleas.[8]

*Exceptions sustained.*

---

[6] The same result would hold for any record which did not satisfy minimal requirements in demonstrating voluntariness and understanding.

When we speak of the contemporaneous record, we mean not only the proceedings on acceptance of the plea, but the record of trial, if there was one, preceding the plea, so far as that record may have any substantial bearing on the question whether the defendant made the plea willingly and intelligently.

It may happen, regrettably, that no record was made of the proceedings on a plea which is later challenged on the ground that no adequate probe was made of the defendant's attitude at the time. In such a case it would be necessary to take proof from witnesses to reconstruct what occurred in court when the plea was made. See *State ex rel. LeBlanc* v. *Henderson*, 261 La. 315, 325-326 (1972); *Clark* v. *State*, 256 So. 2d 551, 552-553 (Dist. Ct. App. Fla. 1972). Cf. *Meller* v. *State*, 431 F. 2d 120, 124 (8th Cir. 1970), cert. den. 400 U. S. 996 (1971).

[7] Where it appears in a postconviction proceeding that the contemporaneous record was fatally inadequate, the effect of the present decision is that the Commonwealth may not introduce evidence to supplement that record; the conviction is to be set aside and the defendant may plead again. Where, however, the contemporaneous record is sufficient on its face, but the defendant claims that his plea was nevertheless involuntary or unknowing for reasons not appearing of record, not only may the defendant introduce relevant evidence, but the Commonwealth may respond with evidence to the contrary from outside the original record.

[8] As to the resentencing following a second trial, see *North Carolina* v. *Pearce*, 395 U. S. 711 (1969); *McHoul* v. *Commonwealth*, 365 Mass. 465, 470-472 (1974); *Gavin* v. *Commonwealth*, 367 Mass. 331, 336-339 (1975).