COMMONWEALTH vs. PETER S. FERNANDES.

Barnstable. May 6, 1983. — January 9, 1984.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Plea. *Due Process of Law,* Plea.

The record of proceedings at the time of acceptance of a plea of guilty in a criminal case failed to show affirmatively that the plea was made voluntarily and intelligently, and thus required that the defendant's convictions be set aside, where it appeared that the judge made no inquiry whether the defendant had the benefit of a satisfactory discussion with counsel about the options realistically available to him and that, although the judge made adequate inquiry about the factual basis of the charges, he made no specific inquiry whether threats were made or inducements offered that might have had the effect of rendering the defendant's decision involuntary. [718-721]

INDICTMENTS found and returned in the Superior Court Department on March 10, 1981.

Motions for a new trial were heard by *Keating,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*David C. Casey* for the defendant.

*Charles A. Morano,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant pleaded guilty to kidnapping, G. L. c. 265, § 26, assault by means of a dangerous weapon, G. L. c. 265, § 15B, and assault and battery, G. L. c. 265, § 13A. A judge in the Superior Court sentenced him to serve five years and one day at the Massachusetts Correctional Institution at Concord on the indictment charging kidnapping. The defendant was placed on probation on the other two indictments commencing from and after completion of the sentence imposed on the kidnapping charge.

While he was still incarcerated, having served more than eight months of his sentence, the defendant, through new counsel, filed a motion for a new trial of each indictment.[1] "A motion for new trial is the appropriate device for attacking the validity of a guilty plea. *Commonwealth* v. *Penrose,* 363 Mass. 677, 681 (1973)." *Commonwealth* v. *Huot,* 380 Mass. 403, 406 (1980).[2] The thrust of the motion was that the plea procedure was defective and that the pleas were not voluntary. The judge denied the motion without hearing testimony or reporting findings. The defendant appealed and we transferred the appeal to this court on our own motion.[3] We agree with the defendant that the plea procedure was defective and that he is entitled to a new trial. Therefore, we reverse the defendant's convictions and we remand this case for trial or plea.

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. *Malloy* v. *Hogan,* 378 U.S. 1 [1964]. Second, is the right to trial by jury. *Duncan* v. *Louisiana,* 391 U.S. 145 [1968]. Third, is the right to confront one's accusers. *Pointer* v. *Texas,* 380 U.S. 400 [1965]." *Boykin* v. *Alabama,* 395 U.S. 238, 243 (1969). Because a plea of guilty involves these constitutional rights, the plea is valid only when the defendant offers it voluntarily, with sufficient awareness of the relevant circumstances, *Brady* v. *United States,* 397 U.S. 742, 748-749 (1970), and with the advice of competent counsel.

---

[1] The defendant claims that he was not admitted to parole after serving six months because since offering the guilty pleas he has maintained his innocence. We are not in a position to assess the validity of that claim. However, we would question the wisdom and fairness of such a practice were it to exist.

[2] The defendant also filed a motion to withdraw his pleas of guilty to the several indictments. That motion was surplusage.

[3] A single justice of the Appeals Court allowed the defendant's motion to be admitted to bail pending appeal.

*Id.* at 758. *Machibroda* v. *United States,* 368 U.S. 487, 493 (1962). *Salkay* v. *Wainwright,* 552 F.2d 151, 153 (5th Cir. 1977). *Colson* v. *Smith,* 438 F.2d 1075, 1078-1079 (5th Cir. 1971).

That these conditions have been met must be shown affirmatively on the record. *Boykin* v. *Alabama, supra* at 242-244. As we observed in *Commonwealth* v. *Foster,* 368 Mass. 100, 102 (1975), *Boykin* holds that "as a matter of constitutional due process, a guilty plea should not be accepted, and if accepted must be later set aside, unless the record shows affirmatively that the defendant entered the plea freely and understandingly." We also concluded in *Commonwealth* v. *Foster, supra* at 103-108, that *Boykin* holds that constitutional due process requires that the affirmative showing must be made and recorded at the time the judge accepts the plea. Lastly, we stated in *Foster, supra* at 107, that this requires "a continuing effort on the part of trial judges, with the help of counsel, so to direct their questions *as to make them a real probe of the defendant's mind. . . .* It is not to become a 'litany' but is to attempt a live evaluation of whether the plea has been sufficiently meditated by the defendant with guidance of counsel, and whether it is not being extracted from the defendant under undue pressure" (emphasis added).

The record here shows that at the plea proceeding the defendant offered to plead guilty to the several indictments. The prosecutor then stated in open court the factual basis for the charges. He stated that shortly after midnight on January 16, 1981, the female victim was walking home from a bus stop at the Otis Rotary in Bourne. The defendant pulled up next to her in an automobile and asked her whether she wanted a ride. When she declined the defendant forced the victim at knife point to enter the automobile. The defendant then drove on, holding the knife in a threatening manner. He told her to take off her coat and knapsack. She had removed her knapsack when the automobile began to skid and slow down. At that time the victim jumped out of the car. Thereafter, she went to the police.

The prosecutor further told the court that the victim described the automobile to the police and later identified it when she was taken by the police to see it. The police spoke to the defendant on two occasions. On the first occasion the defendant denied any involvement in the incident. On the second occasion, the defendant admitted that the victim had been in the car, but said that she had jumped out of his car for no reason. He also told police where the victim's belongings that she had left in the car could be located.

After the prosecutor completed his statement of facts, the following colloquy occurred:

THE JUDGE: "What do you say about this, Mr. Fernandes? Did you hear that?"

THE DEFENDANT: "Yes, I did, your Honor."

THE JUDGE: "What do you say about it? Is that how it happened?"

THE DEFENDANT: "Yes."

THE JUDGE: "Anything you want to add to it?"

THE DEFENDANT: "No."

THE JUDGE: "Anything that was said that isn't true?"

THE DEFENDANT: "No."

THE JUDGE: "Anything further that you want to tell me about?"

THE DEFENDANT: "No."

THE JUDGE: "Who is your lawyer?"

THE DEFENDANT: "Mr. McMahon."

THE JUDGE: "How long has he represented you?"

THE DEFENDANT: "I called him, his office, the night I was arrested."

THE JUDGE: "You understand you have a right to a jury trial?"

THE DEFENDANT: "Yes."

THE JUDGE: "You can waive a jury and try it to a judge alone?"

THE DEFENDANT: "Yes."

THE JUDGE: "You understand you have a right to have your lawyer cross-examine anybody who testifies against you?"

THE DEFENDANT: "I do."

THE JUDGE: "You don't have to tell me anything. You have no reason to incriminate yourself, except for this plea of guilty. Do you understand that?"

THE DEFENDANT: "I do."

THE JUDGE: "Why are you doing this? Is this the way it happened?"

THE DEFENDANT: "Yes."

THE JUDGE: "How far did you go in school?"

THE DEFENDANT: "I finished high school."

THE JUDGE: "Any trouble understanding me?"

THE DEFENDANT: "I understand you all."

THE JUDGE: "Do you know what the penalty is for kidnapping?"

THE DEFENDANT: "I guess life."

THE JUDGE: "Up to twenty years. Assault and battery with a dangerous weapon is ten, and assault and battery is two and a half. Knowing all that, you still want me to take your plea?"

THE DEFENDANT: "I do."

There was no further colloquy with the defendant. The judge imposed the sentence recommended by the prosecutor and agreed to by defense counsel.

This record does not affirmatively show that the defendant tendered the plea freely and understandingly. The judge made no inquiry whether the defendant had the benefit of a satisfactory discussion with counsel about the options realistically available to him. Furthermore, although the judge made adequate inquiry about the factual basis of the charges, the judge did not specifically inquire whether threats were made or inducements were offered that might have deprived the defendant's decision to plead guilty of its voluntariness. Although an inquiry concerning the factual basis of a charge "can be of significant assistance to the judge in the performance of his duty to ensure that the plea is voluntarily and intelligently made," *Commonwealth v. Morrow*, 363 Mass. 601, 608 (1973), such an inquiry does not by itself demonstrate voluntariness. The judge is re-

quired by Mass. R. Crim. P. 12 (c) (5), 378 Mass. 866 (1979), to "conduct a hearing to determine the voluntariness of the plea *and* the factual basis of the charge" (emphasis added). Voluntariness and factual basis are distinct concepts.

After the defendant admitted that the prosecutor's statement of facts was accurate, the judge asked the defendant if there was anything further the defendant wanted to tell him, and the defendant answered, "No." The judge also asked: "Why are you doing this? Is this the way it happened?" The defendant's response was, "Yes." These questions and answers are as close as the colloquy came to an affirmative showing that the plea of guilty was tendered freely and understandingly. This was not close enough to satisfy the constitutional requirements. The colloquy did not adequately focus on the question whether there were any threats or inducements that might have led the defendant to admit the facts recited by the prosecutor. Therefore, the colloquy did not satisfy the due process requirement that there be a "real probe of the defendant's mind" to determine whether the plea "is not being extracted from the defendant under undue pressure." *Commonwealth* v. *Foster,* 368 Mass. 100, 107 (1975).[4]

The defendant's contentions here illustrate the reasons for the constitutional rule announced in *Boykin* v. *Alabama,* 395 U.S. 238 (1969), and amplified in *Commonwealth* v. *Foster, supra,* that an affirmative showing of voluntariness must be made on the record contemporaneously with the taking of the plea. The defendant claims to have had no prior criminal record. He contends that on the day before the trial was to begin his counsel coerced him to plead guilty because counsel was unprepared to try the case. Our atten-

---

[4] The defendant does not argue that he was inadequately advised of his constitutional rights. However, we note that the judge's advice to the defendant that "[y]ou don't have to tell me anything. You have no reason to incriminate yourself, except for this plea of guilty," did not clearly advise the defendant that if he chose to go to trial he could not be compelled to give trial testimony.

tion is called to testimony before the grand jury that the victim jumped out of the defendant's automobile just as her boy friend was driving by (which might suggest that her motivation to jump was to provide an explanation as to why she was in another man's automobile), and to the lack of any evidence that the victim was injured or that a knife was ever found. The defendant argues that a motion to suppress the statements he gave to the police and physical evidence resulting therefrom was appropriate but was never made. In short, the defendant argues that he had a triable case, but his counsel neither represented him adequately nor advised him that he had any realistic option except to plead guilty.

The defendant filed affidavits in support of his motion for a new trial which stated that his counsel had told him on or about the day of trial that counsel could not present a defense to the charges because the defendant had given a statement to the police, and that if the defendant did not plead guilty he would be sentenced to the Massachusetts Correctional Institution at Walpole (Walpole), where he would end up as "someone's wife." It was further asserted by affidavit that counsel told the defendant that the prosecutor had said that if the defendant were convicted after trial the prosecutor would recommend a sentence of from seven to ten years' imprisonment at Walpole. The defendant contends that this was a false statement, that it was designed to frighten the defendant into pleading guilty, and that it had that effect.

Surely, if defense counsel misrepresented to the defendant that the prosecutor had threatened to recommend a sentence of from seven to ten years at Walpole if the defendant were found guilty after trial, and if this affected the defendant's determination to plead guilty, the plea was thereby deprived of its voluntary and knowing character. Of course, a probing inquiry might not have produced the information now advanced by the defendant, but *Boykin* and *Foster* require that a genuine effort to that end have been made. The rationale for this due process requirement is

that a careful inquiry about the voluntariness of a plea may disclose that it should not be accepted, thereby protecting a defendant, to the extent reasonably possible, from the effects of a purported, but invalid, waiver of his constitutional rights. When a careful inquiry is not made before acceptance of the plea, a defendant with a legitimate reason to challenge the voluntariness of his plea is left to make his attack in postconviction proceedings, perhaps many months or years after the plea was tendered, when his motives may be highly suspect, and the credibility of his evidence, even if available, is likely to be seriously questioned. See *McCarthy* v. *United States*, 394 U.S. 459, 469-470 (1969); *Commonwealth* v. *Foster, supra* at 105-106. To place a defendant in such a posture is inconsistent with a proper recognition of the value that ought to be, and is attached by the Supreme Court and this court to the constitutional rights involved. We conclude that that is what has occurred here. Accordingly, the judgments are reversed and the findings are set aside.[5] The case is remanded to the Superior Court for trial or plea.

*So ordered.*

---

[5] If the contemporaneous record had been sufficient on its face, the defendant would nevertheless have been entitled to have this case remanded to the Superior Court to enable him to present evidence on his claim of involuntariness for reasons not appearing of record, to which the Commonwealth would have been entitled to offer evidence from outside the original record in response. The parties would have been entitled to findings. *Commonwealth* v. *Foster*, 368 Mass. 100, 108 n.7 (1975). See Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979). See also *Commonwealth* v. *Stewart*, 383 Mass. 253, 259-260 (1981).