COMMONWEALTH *vs.* THOMAS E. WOOLDRIDGE.

Worcester. October 11, 1984. — January 3, 1985.

Present: BROWN, ROSE, & KASS, JJ.

*Conflict of Interest. Practice, Criminal,* Assistance of counsel, Waiver. *Waiver. Bribery.*

At the trial of a police officer charged with offering a bribe to a fellow officer, a conflict of interest was presented by defense counsel's prior representation, in a related matter, of a police officer who was a witness for the prosecution. [167-168]

Evidence at the hearing of a motion for a new trial of a criminal case warranted the judge's conclusion that the defendant had voluntarily and intelligently waived his right to be represented by counsel free from conflict of interest. [168-169]

On appeal from the denial of a motion for a new trial of a criminal case, this court considered whether the voluntariness of a defendant's waiver of his right to be represented by counsel free from conflict of interest can be established in a postconviction proceeding, even though the defendant had raised the issue for the first time on appeal. [169-171]

Where a criminal defendant in postconviction proceedings sought to establish that he had not voluntarily and intelligently signed a waiver document prepared by his counsel before trial, the Commonwealth was entitled to introduce evidence outside the original record to show that the waiver was knowingly and intelligently made. [171]

At the trial of a police officer charged with offering a bribe to a fellow police officer in violation of G. L. c. 268A, § 2, there was sufficient evidence to warrant the defendant's conviction. [171-172]

Failure by the judge at the trial of a bribery case to instruct the jury that they must find the defendant had offered a "thing of value" did not, in the circumstances, present a substantial risk of a miscarriage of justice. [172]

INDICTMENT found and returned in the Superior Court Department on July 14, 1982.

The case was tried before *Robert V. Mulkern*, J., and a motion for a new trial was heard by him.

*Ned C. Lofton* for the defendant.

*Harry D. Quick, III,* Assistant District Attorney, for the Commonwealth.

KASS, J. To his considerable credit, the prosecutor anticipated, and attempted to avoid, the lawyer conflict of interest predicament which now bedevils this case.

Wooldridge, the defendant, was an Auburn police officer when he was indicted under G. L. c. 268A, § 2, for offering a bribe to a fellow police officer. He turned for legal assistance to Mr. Edward P. Reardon, whose law firm, Reardon and Reardon, had a contract with the Massachusetts Police Association Legal Defense Fund (Association) to provide legal services without cost to individual members. Within two weeks another member of the Auburn police force and the Association, William Stone, availed himself of the services of Reardon and Reardon in connection with disciplinary proceedings arising from the same underlying matter which has spawned Wooldridge's difficulties.

That matter involved a rape of which Francis Sumner, who enjoyed cordial business relations and friendships with many members of the Auburn police, stood accused.[1] Among the police officers with whom Sumner had become chummy were Stone and Wooldridge. The charge against Wooldridge was that on January 5, 1982, he had approached James Guittar, another Auburn police officer, in the station locker room with a proposition that Guittar could earn $5,000 if he would write an "alibi ticket" to Sumner as of the time of the rape. Guittar responded that "any cop stupid enough to try to pull that trick would be hung out to dry" and that "Sumner would own that cop as long as he was around." The conversation ended with a suggestion by Guittar that Wooldridge look up the perjury statute. As soon as Wooldridge departed the police station, Guittar reported the conversation to Sergeant Brennan, the watch commander.[2]

---

[1] Sumner was convicted and unsuccessfully appealed. See *Commonwealth* v. *Sumner,* 18 Mass. App. Ct. 349 (1984).

[2] Sergeant Brennan did not ask for a written report at the time. Guittar made a written report on March 17, 1982, after he had spoken about the matter to the officer investigating the Sumner case.

In late October or early November, 1981, Officer Stone had been approached directly by Sumner to give him, for a price, a blank traffic citation. Stone did not report the incident and as the Sumner case unravelled, that failure, as well as the receipt by Stone from Sumner of $50 either (depending on whose testimony was believed) in return for arresting someone or in connection with a car transaction, became the subject of inquiry by State and local officials. Upon investigation, State authorities decided that Stone had committed no violation of law; the police chief of Auburn suspended him from duty for five days for, among other things, conduct unbecoming an officer. Except for ministerial matters, Reardon and Reardon had concluded with Stone's case by the first week of August, 1982. The trial of Wooldridge took place two months later, on October 5, 1982. He was found guilty by a jury.

As the trial date neared, the assistant district attorney assigned to the case cautioned Mr. Reardon to take heed of the then recent decision in *Commonwealth* v. *Hodge*, 386 Mass. 165 (1982). There the court had decided that concurrent representation of a prosecution witness by a partner of defense counsel in an unrelated matter deprived the defendant of the effective assistance of counsel to which he was entitled under art. 12 of the Massachusetts Declaration of Rights. *Ibid.* On the afternoon before trial, Wooldridge signed a one-page document prepared by Mr. Reardon which acknowledged that Mr. Reardon

> "as the attorney for the Auburn Police Department, discussed my case with Chief Robert Johnson, Sgt. James Brennan, Sgt. Thomas Mancuso, Patrolman Dennis Johnson, Patrolman Robert Robinson, and Patrolman William Stone . . . and that Edward P. Reardon has represented some, if not all the above-named officers and he . . . is under contract with the Auburn Police Department regarding legal difficulties of any and all officers who were brought before any [b]oard or [t]ribunal for any alleged offenses committed while on duty.

"Notwithstanding the foregoing, I hereby waive any claim to any independent attorney and herewith indicate my election to proceed with Edward P. Reardon as my legal representative in the above-entitled matter."

Immediately before trial, counsel engaged in a lobby conference with the judge, largely to discuss what was to be said to the jury about the Sumner rape case and how it would be said. The following exchange appears in the middle of the lobby conference:

MR. REARDON: "I was talking to Mr. Aloise [the prosecutor] about this waiver, judge."

THE COURT: (Reading same). "That may be filed. And I take it that Mr. Wooldridge is an educated person, [and] that you have no question about his ability to execute such a waiver?"

MR. REARDON: "No."

A bit later in the lobby conference, when counsel told the judge what witnesses they intended to call, Mr. Reardon named Officer Stone as one of two witnesses he proposed to interrogate. The assistant district attorney called to attention that Stone was on the prosecution's witness list.

With the acuity of hindsight, we can detect from the mention of Stone in the waiver document, coupled with the reference to him as an anticipated prosecution witness, a warning of conflicting representation more direct than that held to be impermissible in *Hodge*. Here the very same lawyer represented the defendant and a prosecution witness. The trial judge may be forgiven for not seeing cause for alarm. The waiver document was general and did not mention that Mr. Reardon had represented Stone in a matter at least tangentially related to Wooldridge's problem and at a time when he was preparing for Wooldridge's trial. Indeed, the document does not say specifically that Mr. Reardon had represented Stone;

just that he had discussed Wooldridge's case with him. It is understandable, therefore, that the judge made no inquiry of Wooldridge to assure that he was adequately informed of the risks and potential dangers which might be inherent in the multiple representation, as required since *Commonwealth* v. *Davis*, 376 Mass. 777, 784-786 (1978).[3] The subsequent history of the instant case stands as a monument to the wisdom of inquiry by the judge whenever there is a waiver offered of a Fifth or Sixth Amendment right.

Four months after his conviction, Wooldridge, represented by new counsel, moved for a new trial on the ground that trial counsel had conflicting interests in a material prosecution witness. The trial judge held an evidentiary hearing which stretched over four separate dates. It is fair to describe the testimony of Mr. Reardon and his associate, Mr. Rhieu, as generally to the effect that they had discussed with Wooldridge their representation of Stone, and Wooldridge's testimony to the effect that the conflict problem had never been touched upon until the waiver document was placed under his nose on the afternoon before trial.

The judge made detailed findings of fact, which included the following: (a) Stone's testimony for the prosecution was not "trivial." See *Commonwealth* v. *Hodge*, 386 Mass. at 168. (b) Mr. Reardon had adopted a trial tactic of not attempting to destroy Stone's credibility but, rather, using his testimony to buttress the defense theory that Wooldridge's mentioning of Sumner's request for an alibi ticket was not an attempt to bribe, but just so much locker-room talk. (c) Nevertheless, Mr. Reardon's representation of the defendant and Stone on matters which arose out of substantially the same facts constituted a conflict of interest. (d) The defendant, at the time he signed the waiver, understood the concept of conflict of interest.

---

[3] *Commonwealth* v. *Davis* involved joint representation of codefendants at a trial by a single lawyer. The necessity to establish that a defendant has intelligently waived the right to conflict-free counsel is no less pertinent when the conflict is with a witness, as *Commonwealth* v. *Hodge*, 386 Mass. at 167 and 170, calls to attention. See also *Commonwealth* v. *Connor*, 381 Mass. 500, 506 (1980); *Commonwealth* v. *Walter, ante* 82, 86-87 (1984).

(e) The defendant understood the terms of the waiver and knowingly and intelligently elected to retain Reardon with full knowledge of the conflict of interest.

Those findings go a long way toward resolution of two issues which the parties have contested on appeal: whether a conflict of interest existed and whether the waiver was voluntary and intelligent. The findings of the trial judge on questions concerning voluntary and intelligent waiver of a constitutional right are entitled to substantial deference, with a reservation, however, that an appellate court indulges every reasonable presumption against waiver of a fundamental constitutional right. See *Commonwealth* v. *Gil*, 393 Mass. 204, 214 (1984), and cases cited.[4]

1. *Whether There Was a Conflict of Interest.*

The existence of a conflict of interest is, as the Commonwealth notes, a mixed question of fact and law. *Cuyler* v. *Sullivan*, 446 U.S. 335, 342 (1980). *Commonwealth* v. *Stirk*, 16 Mass. App. Ct. 280, 287 (1983) (Dreben, J., dissenting in part), *S.C.*, 392 Mass. 909 (1984). We have no difficulty accepting the judge's conclusion that the case presented an instance of conflict of interest in the representation of multiple defendants. The Commonwealth, noting that our cases on conflict treat simultaneous representation and threatened present or future conflict,[5] makes much of the fact that Mr. Reardon's office had concluded Stone's case by the time Wooldridge went to trial. It is probably correct that representation of a client does not forever quarantine a lawyer from encountering that former client in an adversary posture. Here, however, the multiple representation was in connection with a related matter

---

[4] Subsidiary findings of fact receive more than deference; they are accepted by an appellate court in the absence of clear error. *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980). *Commonwealth* v. *Aarhus*, 387 Mass. 735, 742 (1982). *Commonwealth* v. *Boiselle*, 16 Mass. App. Ct. 393, 396 (1983).

[5] See, e.g., *Commonwealth* v. *Geraway*, 364 Mass. 168, 172 (1973); *Commonwealth* v. *Michel*, 381 Mass. 447, 453 (1980); *Commonwealth* v. *Hodge*, 386 Mass. at 167 (multi-representation before, during, and after the defendant's trial). Contrast *Commonwealth* v. *Leo*, 11 Mass. App. Ct. 283, 285-286 (1981).

and existed while Mr. Reardon's firm was preparing Wooldridge's defense. What Stone might have to say could be useful or damning to Wooldridge, and vice versa. Mr. Reardon continued to owe professional loyalty to Stone as part of the Association constituency, and, finally, Stone was not entirely in the clear. The district attorney had taken no action against him, but, hypothetically, was free to do so should cross-examination of Stone turn over an appropriate ground. When a conflict exists, it is not necessary that the defendant prove that his trial counsel's performance was adversely affected by the conflict. *Commonwealth* v. *Hurley,* 391 Mass. 76, 81 (1984).

2. *Whether the Defendant Waived Conflict-free Counsel.*

For the moment, we leave aside whether it is possible to test after trial the legal sufficiency of a pretrial waiver of conflict-free counsel. We consider first if the posttrial inquiry warranted the judge's conclusion that the waiver had been voluntary and intelligent. Although, as we have observed, the written waiver was excessively general in its content, it was not without some evidentiary weight toward establishing that Mr. Reardon or Mr. Rhieu had discussed the conflict issue with Wooldridge and that Wooldridge had opted to be represented by Mr. Reardon. The judge found that Wooldridge "appeared on the witness stand to be an intelligent and well-spoken individual." Wooldridge had testified 300 times in District Court and twenty times in Superior Court. It was open to the judge to regard with skepticism Wooldridge's after-the-fact contention that he didn't understand what he was signing. Cf. *Commonwealth* v. *Rittenberg,* 366 Mass. 446, 448-449 (1974). Contrast *Commonwealth* v. *Connor,* 381 Mass. 500, 505 (1980).

At that, taken in isolation, the document was far from adequate in establishing that Wooldridge understood the possible ramifications of Mr. Reardon's multiple representation. That, of course, is why the trial judge heard further evidence. Messrs. Reardon and Rhieu were, in their testimony, short on recollection of precise conversations, and they were shy of any contemporaneous file notes of conversations with Wooldridge about the conflict problem. The two lawyers (each was

sequestered while the other testified) were, however, certain and voluble that they had discussed the conflict issue with Wooldridge and that the question had been mutually resolved in favor of multiple representation. The reason for so resolving it, they said, was that their trial strategy contemplated an embrace of Stone's anticipated testimony. It will be recalled that Mr. Reardon was prepared to call Stone as a defense witness. In some cases, multiple representation may carry a certain advantage. *Holloway* v. *Arkansas*, 435 U.S. 475, 482-483 (1978). *United States* v. *Curcio*, 680 F.2d 881, 886 (2d Cir. 1982). The judge was entitled to credit the testimony of Messrs. Reardon and Rhieu, and to discredit that of Wooldridge. From his findings, it is apparent that the judge appraised the evidence in light of the relevant criteria: Had the defendant been alerted in adequate detail to the possible dangers presented by the conflict? Did the defendant have the capacity, by reason of intelligence and education, to make a rational decision in favor of hazarding those dangers? *United States* v. *Curcio*, 680 F.2d at 888.

3. *Whether Voluntary and Intelligent Waiver Can Be Determined After Trial.*

The more troublesome question is whether it is possible to test if a defendant is voluntarily and intelligently waiving conflict free counsel other than by a pretrial interrogation of the defendant by the judge. The Commonwealth argues that the question is not properly before us because second defense counsel did not raise it when presenting his motion for a new trial. That position is consistent with the general principle enunciated in Mass.R.Crim.P. 30(c)(2), 378 Mass. 901 (1979), that any ground which the defendant fails to raise on a motion for postconviction relief is waived. *Commonwealth* v. *Layne*, 386 Mass. 291, 297-298 (1982). Nor does an appellate court generally consider issues which were not presented to the trial court. *Commonwealth* v. *Deeran*, 10 Mass. App. Ct. 646, 649 n.6 (1980). Rule 30(c)(2), however, makes account for grounds which "could not reasonably have been raised in the original or amended motion." The situation in the case before us falls in that category. We cannot tax the defendant with a

failure to raise the point at trial (there is also before us a direct appeal from the judgment) since trial counsel, i.e., Mr. Reardon, thought himself free of any debilitating conflict. Successor counsel on the postconviction relief proceedings confronted a certain embarrassment: he had some hopes for what might result from an evidentiary hearing, yet he would be talking out of both sides of his mouth if, as he moved for such a hearing, he simultaneously urged its inherent futility. We will, therefore, consider the defendant's argument. In that connection we note that there are not present in this case the successive and vexatious postconviction proceedings which *Commonwealth* v. *Layne, supra,* at 297-298, warns against.

The cases have reflected upon the relative unreliability of efforts to probe after the fact what a defendant knew and understood when he waived a constitutional right. See, e.g., *McCarthy* v. *United States,* 394 U.S. 459, 469 (1969); *Commonwealth* v. *Fernandes,* 390 Mass. 714, 719-721 (1984); *Commonwealth* v. *Schofield,* 16 Mass. App. Ct. 199, 205 (1983), rev'd on other grounds, 391 Mass. 772 (1984). A defendant's protestation, after a trial has turned out adversely, that he understood not what he did is likely to have a hollow ring, however true it might have been. See *Commonwealth* v. *Foster,* 368 Mass. 100, 104-106 (1975). In a case involving claimed conflict of interest on the part of defense counsel, lawyers are likely to feel at least subconscious pressure to recall a sufficient discussion of waiver considerations with their clients and to testify accordingly. Thus, when the record is silent as to the defendant's understanding at the time the waiver was made, it may not be pieced together at a posttrial evidentiary hearing. In such a case the conviction is to be set aside. *Id.* at 108 n.7. *Commonwealth* v. *Fernandes,* 390 Mass. at 721. Cf. *Commonwealth* v. *Schofield,* 391 Mass. at 775.

Here the trial record concerning the defendant's understanding is less than satisfactory, but the filing of the written waiver document causes it to be better than "fatally inadequate." *Commonwealth* v. *Foster,* 368 Mass. at 108 n.6. Unlike the circumstances in *Foster,* Wooldridge's waiver was not the product of court imposed ritual, but of a conversation between the

defendant and counsel. Here there was more than ceremony. The document was not a bureaucratic form on which the party to be bound by it simply checked a box, filled in the blanks, or signed on the dotted line. Ceremonies and papers of that sort are the most susceptible to suspicion that they have been executed without thought or information. Above all there is the factor of the defendant's initiative in this case. In *Foster*, the government sought to piece together after the fact that the defendant had acted intelligently and voluntarily when he entered a guilty plea. Wooldridge, on the other hand, moved for a posttrial evidentiary hearing to establish that the waiver document he had filed — and which had been prepared for him before trial — was less than it seemed to be, and that his awareness of its significance was less than might have been expected of a defendant who had more than usual familiarity with the judicial system. If the defendant requests a hearing, he must risk that the issue will be decided adversely; otherwise the posttrial hearing amounts to a one-way ticket for the defendant. Finally, we consider as a factor in the instant case that waiver of conflict-free counsel is lower on the scale of weight or consequence than a guilty plea. See *Ciummei* v. *Commonwealth*, 378 Mass. 504, 508 (1979).

For these reasons we think the nature of Wooldridge's conversations with his lawyers and the degree of his understanding were properly the subject of a posttrial evidentiary hearing at which the defendant could introduce relevant evidence, but the Commonwealth could respond with evidence to the contrary from outside the original record. *Commonwealth* v. *Foster*, 368 Mass. at 108 n.7. As we concluded in part 2 of this opinion, the judge, on the record of the posttrial hearing, was well able to find that the written waiver was intelligent and voluntary.

4. *Sufficiency of the Evidence.*

Wooldridge asserts error in the denial of his motion for a required finding of not guilty. We apply the *Latimore* test, i.e., whether in the light most favorable to the Commonwealth, the evidence and the inferences to be drawn from it are of sufficient force to bring a rational trier of fact to a conclusion of

guilt beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). Guittar's testimony was sufficient to put the Commonwealth over the rail. It lent itself to the inference that Wooldridge would produce $5,000 — presumably from Sumner — in return for an alibi ticket. Stone's testimony reinforced the Commonwealth's case in that it confirmed that Sumner was attempting to obtain a phony citation. There was evidence of a continuing personal relationship between Wooldridge and Sumner. Although the inferences to be drawn were not necessarily inescapable and a conflicting inference might have been a possibility,[6] that did not render the evidence insufficient. *Commonwealth* v. *Wilborne*, 382 Mass. 241, 245 (1981). *Commonwealth* v. *Lanoue*, 392 Mass. 583, 589-590 (1984).

*5. Jury Instruction.*

There was no objection at trial to the failure of the judge to instruct the jury that they must find the defendant had offered a "thing of value" to Guittar. The absence of an objection forecloses review unless there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Maldonado*, 389 Mass. 626, 631-632 (1983). We perceive no such risk. The Commonwealth's case, after all, was premised on an offer of $5,000, and there is no possibility that the jury were confused about something of value having been offered by the defendant.

> *Judgment affirmed.*
> *Denial of motion for a new trial affirmed.*

BROWN, J. (concurring). I am in total agreement with the opinion of the majority. I do feel obliged to add that the Canons of Ethics and Disciplinary Rules (see S.J.C. Rule 3:07, 382 Mass. 768 [1981]) are not to be left in the bar examination test-

---

[6] For example, the theory the defense posits on appeal, that Wooldridge was merely telling Guittar that Sumner was looking for a police officer willing to be corrupted.

ing room. The zeal with which this court has from time to time criticized improper conduct by counsel is matched by our appreciation of exemplary professional and ethical conduct. The performance of the assistant district attorney in the instant case fills the latter bill.[1] It is a welcome sight to find counsel informing the other side *at the outset* of potential problems or occurrences which might cause the trial to be unfair or otherwise flawed. See S.J.C. Rule 3:07, Canon 1, as appearing in 382 Mass. 769 (1981). Such prudence is worthy of special praise.[2]

Both the Commonwealth and the defense bar do well to warn opposing counsel of ethical problems as well as personally keeping to the mark.[3] Silently watching an adversary's ethical missteps, inadvertent or otherwise, does not advance the process or the profession.

---

[1] For but one example of an instance in which an assistant district attorney exercised sound professional judgment in an attempt to steer the court away from error, see *Commonwealth* v. *Repoza*, 382 Mass. 119, 135 n.8 (1980).

[2] Such a prophylatic act may be analogized to a component of the pretrial practice in Alaska where at the so-called Omnibus Hearing the trial judge makes inquiries to "[a]scertain whether there are any procedural or constitutional issues which should be considered." Alaska R.Crim.P. 16(f)(2)(iv) (1975).

[3] "A lawyer shall not . . . [e]ngage in conduct that is prejudicial to the administration of justice." S.J.C. Rule 3:07, DR 1-102(A)(5), as appearing in 382 Mass. 769 (1981). Failure to avoid a conflict of interest is certainly prejudicial to the administration of justice. Likewise, it would seem that a failure on the part of counsel to point out a potential conflict of interest to opposing counsel (and the court) is prejudicial to the administration of justice.