COMMONWEALTH vs. ALVIN DAWSON.

Suffolk.  October 10, 1984. — January 21, 1985.

Present: GRANT, DREBEN, & KASS, JJ.

*Practice, Criminal,* Plea.

Where the record of a plea colloquy in a murder case revealed the defend-
ant's minimal intelligence and education and indicated some confusion
on his part, and where the record showed no questioning of the defendant
as to whether his plea was made voluntarily, as to whether there were
any threats or inducements, or whether any agreement had been made
which was contingent on the plea, there was no error in the allowance
of the defendant's motion to withdraw his plea of guilty. [223-226]

INDICTMENT found and returned in the Superior Court De-
partment on March 25, 1981.

A motion for leave to withdraw a plea of guilty and for a
new trial, filed on October 21, 1982, was heard by *John J.
Irwin, Jr.,* J.

*Robert N. Tochka,* Assistant District Attorney, for the Com-
monwealth.

*Casimir S. Lopata* for the defendant.

DREBEN, J. On July 2, 1980, the body of Elizabeth C. was
found on the roof of an apartment building in Roxbury. She
had been stabbed eight times, had both jaws broken and had
abrasions on her face consistent with the imprint of a boot.
The defendant and his nephew, Thomas, were indicted for first
degree murder. At hearings on motions to suppress and during
trial each defendant attempted to show that the other was the
culprit.[1] There was also evidence of damaging admissions by
each defendant as to his own involvement which could be
understood to exclude the other defendant. After several days

---

[1] Motions to sever were denied. But see *Commonwealth* v. *Moran,* 387
Mass. 644, 659 (1982), which indicates that severance may have been re-
quired.

of trial, marked by striking variations from pretrial statements on the part of several key witnesses, the defendant pleaded guilty to second degree murder.[2] He was sentenced to life imprisonment at Massachusetts Correctional Institution, Walpole. Five months later he filed a pro se motion to withdraw his guilty plea and for a new trial under Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979), on the grounds that his plea had not been voluntary and that he had not received the effective assistance of counsel.

After appointment of new counsel and an evidentiary hearing,[3] the motion judge[4] filed a written memorandum containing his findings and rulings. He concluded that "the record contemporaneous with the acceptance of the defendant's guilty plea does not convince this court that the plea was voluntarily, knowingly and freely offered." He also "specifically" found, in light of the plea colloquy "*as well as other evidence*[5] *presented during the hearings*, . . . that the defendant was confused

---

[2] On the same day that the defendant's plea was accepted, the following also took place: the indictment against the codefendant was dismissed; a new indictment for accessory after the fact of murder was returned against the codefendant; the codefendant pleaded guilty; and the codefendant was sentenced to eighteen months in a house of correction. The defendant claims that at the time of his plea he was unaware of the fact that his nephew was about to plead.

[3] Although the defendant claimed that the plea colloquy was defective on the contemporaneous record, he sought the motion hearing at which he testified and introduced other evidence. See *Commonwealth v. Wooldridge, ante* 162 (1984). The Commonwealth also presented evidence. See note 8, *infra*.

[4] The case was tried before a judge who has since retired. Consequently, another judge was assigned to hear the motions. See *Commonwealth v. Sullivan*, 385 Mass. 497, 498 n.1 (1982).

[5] The judge's finding that the defendant was confused was supported by the evidence at the motion hearing. The defendant's minimal intelligence became apparent to the motion judge from the defendant's inability to understand the purport of his own counsel's questions as to what had occurred at the time of the plea. Evidence was also introduced that the defendant could not read. Although testimony from the defendant's former counsel indicated his belief that there was understanding by the defendant as to the plea, the motion judge "had the responsibility of evaluating the credibility of the witnesses," *Commonwealth v. Perry*, 389 Mass. 464, 470-471 (1983), and did not have to accept former counsel's conclusions.

at the time his plea was taken" (emphasis supplied).[6] This is an appeal by the Commonwealth from the ensuing order for a new trial.

The Commonwealth, citing *Commonwealth* v. *Foster,* 368 Mass. 100, 106, 108 n.6 (1975), argues that if, as it claims, the contemporaneous record[7] satisfies the "minimal require-ments in demonstrating voluntariness and understanding" of the plea, the judge committed error in allowing the plea to be withdrawn.[8] An examination of that record[9] leads us to conclude that the Commonwealth has not met its burden of showing that the guilty pleas "were understandingly and voluntarily made." *Commonwealth* v. *Morrow,* 363 Mass. 601, 604 (1973). *Boykin* v. *Alabama,* 395 U.S. 238, 242-243 (1969). *Commonwealth* v. *Fernandes,* 390 Mass. 714, 719 (1984).

The plea colloquy reveals the defendant's minimal intelli-gence and education and indicates some confusion on his part. A portion of the colloquy, quoted by the motion judge, is

---

[6] It is not entirely clear from the memorandum of the motion judge whether he ruled that the plea colloquy was tainted on its face by prejudicial constitu-tional error, or whether he based his findings on additional evidence received at the motion hearing. See note 5, *supra,* and note 12, *infra.* His conclusions may, perhaps, be viewed as alternative rulings. (1) The plea colloquy was facially invalid. (2) If that ruling were incorrect, he would, in any event, grant the motion in his discretion under rule 30(b) based on the additional evidence. See *Commonwealth* v. *Cook,* 380 Mass. 314, 321 n.12 (1980).

[7] The Commonwealth correctly notes that such record includes the record of the trial preceding the plea, as well as the proceedings on the acceptance of the plea. *Commonwealth* v. *Foster, supra* at 108 n.6.

[8] We do not take the Commonwealth to mean that where additional evi-dence is properly received such evidence cannot be considered. Thus, in *Commonwealth* v. *Foster, supra* at 108 n.7, the court pointed out that a defendant can introduce relevant evidence to show that a plea is involuntary, even if the contemporaneous record is sufficient on its face. In such event, however, the Commonwealth may also present evidence from outside the original record. Accord *Commonwealth* v. *Swift,* 382 Mass. 78, 84 (1980). See *Commonwealth* v. *Wooldridge, supra* at 171.

[9] The additional evidence presented at the motion hearing reinforced the judge's findings. See note 5, *supra.* In other words, that evidence only added to the Commonwealth's burden. As indicated in the text, we find the colloquy, in itself, insufficient.

reproduced in the margin.[10] The motion judge pointed out this portion as an example, among others, showing that the defendant's answers concerning his participation in the murder were equivocal, that he did not remember what happened and that he only responded when pressed by the judge.

Deficiencies in a record which might pass constitutional scrutiny with a defendant of normal or high intelligence must here be appraised with a more critical eye. See *Commonwealth* v. *Huot,* 380 Mass. 403, 409 (1980). This defendant's limited powers of comprehension demand a detailed inquiry, what has been called "a compendious reminder." *Ciummei* v. *Commonwealth,* 378 Mass. 504, 510 (1979).

When we turn to those portions of the plea colloquy, set out in the appendix to this opinion, which do not concern the facts of the crime itself we find no such inquiry as to whether the pleas were "understandingly and voluntarily made." *Commonwealth* v. *Morrow,* 363 Mass. at 604. We note first that the requirements of Mass.R.Crim.P. 12(c)(3)(A), 378 Mass. 868 (1979), were not met. The defendant was not informed of his right to confront witnesses or of his privilege against self-incrimination. Whether the judge need enumerate these

---

[10] The portion of the colloquy which follows came after the assistant district attorney urged that the defendant's previous statements be "clarified."

> THE JUDGE: "Mr. Dawson, you told me here you didn't remember exactly what happened but you did end up with a knife in your hand with blood all over it."
>
> THE DEFENDANT: "Yes, sir."
>
> THE JUDGE: "Do you remember stabbing her?"
>
> THE DEFENDANT: "No, sir. I —."
>
> THE JUDGE: "Did you kick her?"
>
> THE DEFENDANT: "No, sir."
>
> THE JUDGE: "How do you think she got the two broken jaws?"
>
> THE DEFENDANT: "I might have kicked her, sir."
>
> THE JUDGE: "And you say you probably stabbed her, huh?"
>
> THE DEFENDANT: "I stabbed her."
>
> THE JUDGE: "You stabbed her?"
>
> THE DEFENDANT: "Yes, sir."
>
> THE JUDGE: "All right."

rights where, as here, the defendant pleads guilty after several days of trial, is a question we need not consider. See *United States* v. *Michaelson,* 552 F.2d 472, 477 (2d Cir. 1977).[11]

There were more glaring omissions. The record shows no questioning of the defendant as to whether his plea was made voluntarily, as to whether there were any threats or inducements, or, as required by Mass.R.Crim.P. 12(c)(1), 378 Mass. 868 (1979), whether any agreement had been made which was contingent on the plea. This failure to focus on whether the plea was rendered freely is here fatal. *Commonwealth* v. *Fernandes,* 390 Mass. at 719.

The Commonwealth claims that the proceedings prior to the plea provide the requisite support to show understanding and voluntariness on the part of the defendant. It is true that "[s]trong evidence of the defendant's guilt with respect to a more serious charge increases the likelihood that [a] defendant's decision to plead to a lesser charge was intelligently made." *Commonwealth* v. *Sullivan,* 385 Mass. 497, 508 (1982). Although persuasive evidence[12] at trial or an inquiry concerning the factual basis of the plea can be of significant assistance to the judge in insuring that the plea is voluntary, neither in itself demonstrates voluntariness. *Commonwealth* v. *Fernandes,* 390 Mass. at 718. "Voluntariness and factual basis are distinct concepts." *Id.* at 719. Even assuming that the defendant under-

---

[11] See also *Commonwealth* v. *Nolan,* 16 Mass. App. Ct. 994, 995 (1983), where we declined to adopt a per se requirement that any departure from rule 12 necessitates a new trial as matter of law.

[12] We note that there may have been factual considerations weighed by the motion judge in determining that "justice may not have been done." See note 6, *supra.* Although there was evidence at trial that the defendant had stabbed the victim, there was also significant evidence presented at the hearing on the motion to suppress, as well as at trial, that the codefendant had been responsible for the victim's death and had admitted that fact. There was testimony that the latter wore boots on the night of the victim's death while the defendant wore sneakers. This evidence is significant in light of the imprint on the victim's face. In addition, letters which were not before the trial judge were introduced at the hearing before the motion judge from key witnesses for the Commonwealth suggesting that trial testimony concerning the defendant's admissions was fabricated.

stood the charges against him,[13] a question which must be addressed is whether the defendant's plea was voluntary in the sense that it was not extracted from him "under undue pressure." *Ibid.,* quoting from *Commonwealth* v. *Foster,* 368 Mass. at 107.[14] When that question is considered in light of the defendant's powers of comprehension and other defects in the plea proceedings, it is evident that the "colloquy did not satisfy the due process requirement that there be a 'real probe of the defendant's mind' " to determine whether the plea was rendered freely. *Commonwealth* v. *Fernandes, supra* at 719. Accordingly, the judge correctly decided that a new trial was required.

*Order for new trial affirmed.*

APPENDIX.

THE CLERK: "Mr. Dawson, is it your intention to offer a change of plea from not guilty to guilty to so much of Indictment No. 034830 as sets forth the offense of murder in the second degree?"

THE DEFENDANT: "Yes."

THE JUDGE: "Mr. Dawson, how old are you?"

THE DEFENDANT: "Thirty."

THE JUDGE: "How far through school did you go?"

THE DEFENDANT: "Sixth grade."

THE JUDGE: "You understand that if you wish, that you can go on with the trial all the way to a jury verdict, whichever? You understand that the jury is upstairs still, I can bring them down here and we can go on with the trial? Do you understand that?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "That if you change your plea, the trial stops. Do you understand that?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "If you change your plea, that if I made any mistakes of law in the course of the trial, you lose all rights of appeal. Do you understand that?"

THE DEFENDANT: "Yes."

---

[13] The defendant also challenges his understanding of the charges against him. We need not reach that issue.

[14] Claims similar to those in *Fernandes, supra* at 720, were made in this case. The defendant argued that his plea was coerced, that his counsel had told him he had no option other than to plead if he wished ever to see daylight, and that counsel was unprepared and ineffective.

Commonwealth v. Dawson.

THE JUDGE: "Now, I presume you've talked this matter of a change of plea over with your attorney, Mr. Wier?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "As a matter of fact, you talked it over at length, did you not?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "He explained to you that if you were convicted of first-degree murder, I would have to sentence you to life imprisonment and you would never be eligible for parole? Did he explain that?"

THE DEFENDANT: "Yes."

THE JUDGE: "Did he explain that if you changed your plea to second-degree murder, I have to sentence you to life imprisonment but that you would be eligible for parole – the statute says in fifteen years, but if you behave yourself, or for good behavior, it would work out to about twelve years and some months?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "Did he tell you that?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "And, of course, if the jury found you not guilty, you'd walk right out? You know that?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "Did he tell you that, on the evidence, if the jury believes it, that they could well convict you of first-degree murder?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "Did he explain that to you?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "All right. Now, I understand that you have an injury to your head as a result of an automobile accident back in 1979, your head and your hip, is that right? We've been over the hospital records of that injury, and although you had a fractured skull, apparently, from the records, it was not too serious. Do you feel that you understand what you're doing now?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "Is there any question of citizenship here?"

DEFENSE COUNSEL: "No question of citizenship, your Honor."

THE JUDGE: "All right."

THE JUDGE: "Now, I understand that, according to the testimony that I've heard and that the jury heard, that there was a lot of drinking going on that day, is that right?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "You understand that if the jury felt that you were so drunk that you could not realize what you were doing, that they would probably not convict you of first-degree murder. Will you tell me what happened, what you did?"

(The remainder of the colloquy relates to the facts.)