## COMMONWEALTH vs. LLOYD PAUL DUEST.

No. 88-P-210.

Middlesex. May 16, 1988. — June 27, 1988.

Present: GREANEY, C.J., SMITH, & WARNER, JJ.

*Practice, Criminal,* Plea, Transcript of hearing, Assistance of counsel, Attendance of witnesses. *Constitutional Law,* Plea. *Attorney at Law,* Conflict of interest. *Conflict of Interest.*

Although the stenographic record of proceedings at the time of acceptance of defendant's pleas of guilty to charges of armed robbery and unlawfully carrying a firearm had been destroyed in accordance with Supreme Judicial Court Rule 1:12, 382 Mass. 717 (1981), the Commonwealth, nevertheless, was able to establish that the defendant's pleas on these two charges were voluntarily made and based on intelligent admissions of guilt by providing evidence outside that record, which it offered in a postconviction proceeding, including both the judge's memorandum in the nature of findings of fact that he would not have accepted a plea from any defendant unless there had been factual support demonstrated for the charges, that the elements of the charges had been explained, in lay terms, to the defendant, and that the defendant had affirmatively stated that he understood the charges and his rights to insist on a trial; and the defendant's own testimony under oath at the trial of a codefendant acknowledging his active participation in the armed robbery. [145-149]

A defendant at a hearing on a motion for leave to withdraw his pleas of guilty to criminal charges failed to show the existence and the precise character of a conflict of interest which formed the basis of his claim that he had been denied his right to effective assistance of counsel by his attorney's joint representation of the defendant and a codefendant. [149]

The judge at the hearing on a motion to withdraw pleas of guilty to criminal charges did not commit an abuse of discretion in denying the defendant's motion, pursuant to G. L. c. 233, § 13B, to be brought from the State of Florida, where he was then incarcerated, to Massachusetts to testify at the hearing on the motion. [149]

INDICTMENTS found and returned in the Superior Court on April 10, 1970.

A motion for leave to withdraw pleas of guilty and for a new trial was heard by *Allan M. Hale, J.*, sitting under statutory authority.

*Andrew Silverman,* Committee for Public Counsel Services, for the defendant.

*Cheryl A. Jacques,* Assistant District Attorney, for the Commonwealth.

GREANEY, C.J.  On April 10, 1970, a grand jury in Middlesex County returned indictments charging the defendant with armed robbery, unlawfully carrying a firearm, and armed assault with intent to murder. On January 13, 1971, the defendant, represented by counsel, offered pleas of guilty to the three indictments. His offer of pleas to the charges of armed robbery and unlawfully carrying a firearm were accepted on January 13, 1971, by a judge of the Superior Court. The defendant's offer of a plea to the armed assault with intent to murder charge was not accepted. However, on January 18, 1971, the defendant's plea to that charge was accepted[1] and the defendant was sentenced to concurrent five to ten year terms at M.C.I., Walpole, on the armed robbery and armed assault with intent to murder charges. The defendant's conviction for unlawfully carrying a firearm was placed on file with his consent. The sentences appear to have been served.

On September 25, 1987, the defendant filed a motion seeking to withdraw all three guilty pleas. See Mass. R. Crim. P. 30(b), 378 Mass. 900 (1979). The motion was heard by the judge who had presided at the plea proceedings. After consideration, the judge entered a memorandum of decision denying the motion. The defendant has appealed. We are concerned only with the pleas to the charges of armed robbery and unlawfully carrying a firearm.[2] We consider two issues: (1) whether

---

[1] The docket does not contain an entry indicating that the plea to armed assault with intent to murder was accepted, but the judge states in his memorandum that he had accepted the plea and both counsel proceed on appeal on the basis that the plea had been accepted.

[2] The Commonwealth acknowledges that it cannot meet its burden of establishing the circumstances of the plea to the indictment charging armed assault with intent to murder. Note 1, *supra*. There is no proof that the de-

the Commonwealth has demonstrated a basis to sustain those pleas under governing constitutional principles and (2) whether the judge erred in denying the defendant's motion, brought pursuant to G. L. c. 233, § 13B, to be brought from the State of Florida, where he is now incarcerated, to Massachusetts to testify at the hearing on the motion.

1. (a) *The criminal episode.* On March 4, 1970, at approximately 9:00 P.M., employees of the First National Stores supermarket in Reading were robbed at gunpoint by two men wearing masks. An accomplice waited outside the store in a stolen yellow Ford Mustang automobile, which was used as the getaway vehicle. As police officers pursued the Mustang, one of the criminals leaned out the window and fired shots from a pistol at the police cruiser. Richard Duest and Frank Stewart were arrested shortly after the chase ended. The defendant surrendered to the police the next day.

(b) *The pleas.* As has been indicated, on January 13, 1971, the defendant, represented by counsel, offered pleas of guilty to the three charges.[3] The offer of pleas to the armed robbery and carrying a firearm charges were accepted by a judge of the Superior Court. The defendant's offer of a plea to the armed assault with intent to murder charge was not then accepted.

fendant harbored a specific intent to murder or kill when shots from a pistol were fired out of the window of the getaway vehicle at the police cruiser chasing that vehicle. The only evidence on that point is to the effect that the shots were fired at the pursuing police cruiser to ward it off, and that there was no intent to kill the police officers in the cruiser. The record, therefore, is fatally deficient on the essential mental element of armed assault with intent to murder, as that element has been clarified by *Commonwealth* v. *Henson,* 394 Mass. 584 (1985). The *Henson* decision has retroactive application. See *Commonwealth* v. *Ennis,* 398 Mass. 170, 175 (1986). We find the Commonwealth's concession justified, and we accept it.

Even though the firearm conviction was placed on file with the defendant's consent, the judge entertained the defendant's motion to withdraw it. We shall consider it also, noting that most of the argument at the hearing on the motion in the Superior Court concerned the armed robbery and armed assault with intent to murder convictions.

[3] On January 13, 1971, the defendant's cousin, Richard Duest, offered to plead guilty to the same three charges as brought against the defendant. The judge accepted the pleas and imposed sentences. Richard was represented by the same lawyer who represented the defendant.

However, on January 18, 1971, the plea to that charge was accepted and the defendant was sentenced on all three charges.

(c) *The defendant's testimony at the trial of Frank Stewart.* On January 27, 1971, fourteen days after his pleas to the armed robbery and firearm charges, the defendant appeared as a witness for the defense at the trial of a codefendant, Frank Stewart, who was charged with armed robbery, armed assault with intent to murder, and illegal possession of a firearm. See *Commonwealth* v. *Stewart*, 365 Mass. 99 (1974). The defendant testified under oath before a Superior Court judge and jury as follows. On March 4, 1970, at about 9:00 P.M., he and his cousin, Richard, drove in a yellow Mustang convertible (which the defendant admitted stealing) to the First National in Reading. The defendant, who had previously "cased" the store (by watching to see who managed it, how late they stayed, and how often the police went by), went there to "hold it up."

The defendant and his cousin entered the store wearing masks. The defendant's cousin stuck a fully loaded P-38 Luger pistol in the store manager's ribs and, according to the defendant, told the manager "to get the fuck over [to] the safe or [Richard Duest would] blow his head off." The defendant took the money out of the safe and placed it into a large sack which the defendant described as "an insulation to a sleeping bag . . . [which] was about five feet long, two feet wide." The two men fled the store and drove the stolen yellow Mustang to another location, where they switched to the defendant's own yellow Mustang.

They were eventually followed by a police cruiser. A chase ensued, during which Richard Duest, at the defendant's instructions, fired a full clip of bullets from the pistol at the pursuing police cruiser. After the defendant's vehicle hit a snowbank, the defendant grabbed the money and fled. The defendant hid in some bushes until the police left the area. He testified that Frank Stewart was not involved in the incident. The Mustang automobile was found. On the vehicle's front seat was a German Luger pistol, model P-38, with the ammunition clip empty and intact. Frank Stewart and Richard Duest were apprehended in the area. Before concluding his testimony at Stewart's trial,

the defendant answered "yes" to the question set forth in the margin.[4] That question concerned the same crimes to which the defendant entered pleas.

(d) *The motion to withdraw pleas and affidavits.* On September 25, 1987, the defendant filed his motion to withdraw the guilty pleas. The motion was accompanied by several affidavits. In the motion itself, the defendant made two principal allegations. First, he contended that he had not voluntarily, intelligently, and knowingly pleaded to the armed robbery charge because he had not been adequately advised of, and consequently did not understand, the mental element of that crime. Second, he alleged that joint representation of himself and his cousin, Richard Duest, by the same lawyer resulted in a violation of his right to the effective assistance of counsel.

In his affidavit, dated September 23, 1987, the defendant admitted that he, his cousin, Richard Duest, and Frank Stewart had gone to the First National supermarket. The defendant's role was to drive the getaway vehicle. The defendant claimed, however, that he did not know that an armed robbery was to occur, but rather believed that his cousin and Stewart simply intended to sneak into the store without being observed and steal the contents of the safe. The defendant stated that his sole intent was to participate in the commission of a larceny. According to his affidavit, he never understood "that what [he] actually intended to occur in the store (i.e., a larceny) was relevant to [his] legal culpability for what actually transpired (i.e., a robbery)." As to the assistance of counsel claim, the defendant alleged that his lawyer never explained to him that his culpability might not be the same as the culpability of his cousin and Stewart. The defendant stated that his counsel was more interested in discussing how much time the defendant would be willing to serve in exchange for pleas of guilty.

---

[4] "You are the same Lloyd Paul Duest who, on March 4, 1970, at Reading, with a dangerous weapon, did assault, being armed with a dangerous weapon, did assault [the victim] with intent to rob him, and thereby did rob and steal from the person of said [victim] money of the property of the First National Stores, Incorporated, a corporation legally established and existing; and who, on January 18, 1970 [*sic*], pleaded guilty to that charge and was sentenced to Walpole for a term not exceeding ten years, not less than five, aren't you?"

Also accompanying the motion was the affidavit of Richard Duest, dated September 22, 1987. Richard stated that he and Frank Stewart had robbed the supermarket while the defendant remained in the getaway vehicle waiting to drive them away. Richard also stated that he had fired the shots at the pursuing police cruiser in an attempt to stop the chase.[5] His claims about the quality of his lawyer's representation generally repeat the defendant's assertions, with Richard also alleging that their joint counsel's "main interest seemed to be how much time we were willing to accept on a guilty plea."

A third affidavit by the defendant's present counsel, dated September 24, 1987, furnished copies of the indictments and docket sheets and identified the court reporter who had taken down the plea proceedings, one Richard Ross. Counsel set forth his efforts to locate the stenographic notes of the guilty pleas, stating that he (counsel) "was also told that Mr. Ross [had] retired many years ago; that his stenographic notes [had been] retained by the Clerk's office for six years and then destroyed."[6]

(e) *The hearing on the motion.* On October 27, 1987, the judge who had accepted the defendant's pleas heard his motion to withdraw them. The defendant was not present at the hearing. It is agreed that the stenographic notes of the plea hearings cannot be found, that they have probably been destroyed, and that an inquiry at the office of the defendant's then counsel (who is deceased) could locate no file or materials pertinent to the case. The prosecutor who represented the Commonwealth could not be identified, and other possible sources (such as

---

[5] Richard Duest also testified at the trial of Frank Stewart that he and the defendant robbed the store and that Frank Stewart was not involved. This testimony, like that of defendant, conflicts with the version of the events set forth in Richard Duest's affidavit in support of his cousin's motion.

[6] An affidavit by another court reporter corroborated the main points of this statement. This reporter stated that after Ross had left his employment with the Superior Court, the reporter had obtained Ross' stenographic notes, which in 1973 were placed in the vault of the Middlesex County Superior Court clerk's office. In 1987, this reporter was asked to locate the notes. He stated that he "performed a diligent and thorough search of the vault . . . [but that the notes were] no longer in the vault."

the probation file) have provided no meaningful information about the plea proceedings.

At the hearing, the Commonwealth offered the transcript of the defendant's testimony at Stewart's trial, the police reports, statements of the store employees who were the victims of the robbery, and a copy of the defendant's Massachusetts criminal record. Legal argument of the prosecutor and the defendant's counsel was confined to the issues that will be discussed later in this opinion. At the conclusion of the hearing, the judge took the motion under advisement.

(f) *The defendant's second affidavit.* On November 27, 1987, after the hearing, the defendant filed a second affidavit. That affidavit was in response to the Commonwealth's reliance on the defendant's testimony at the Stewart trial. In the affidavit the defendant stated that he had lied in his testimony at the Stewart trial. The defendant indicated that around January 23 or 24, 1981, while he was at M.C.I., Walpole, a friend of Stewart "held a knife to my neck and told me I was going to testify at Frank Stewart's trial." The defendant's second affidavit went on to state that Stewart's friend "even told me what I had better say: that I didn't know anything about Frank Stewart and that it was me and my cousin Richie who went in the store Frank was charged with robbing. He told me clearly that if I didn't do what he said, he was going to murder me."

(g) *The judge's decision.* On December 10, 1987, the judge denied the defendant's motion to withdraw his pleas and accompanied his decision with a memorandum. After reviewing the defendant's allegations, as set forth in his motion and affidavits, and his testimony at Stewart's trial, the judge concluded in the memorandum that the defendant "is, or was not, truthful in any of the foregoing [statements]." The judge then stated that, while he did not remember the particulars of the sixteen year old plea, it was his policy "not to accept a plea unless the factual support of the charges were stated to a defendant, . . . and the defendant agreed that all matters stated were factual." The judge noted that he "would describe . . . in lay terms the elements of [the] charge(s) as alleged in the indictments." He stated that he would not accept a plea unless he "ascertain[ed] to

[his] satisfaction that the offer to plead was voluntary and that the charges and [the defendant's] rights to a trial were fully understood." The judge further stated that he would have complied fully with the requirements of *Boykin* v. *Alabama*, 395 U.S. 238 (1969), which he was aware of, in assuring that the defendant's pleas were knowing and voluntary. Finally, the judge noted that "the questions [he] asked would have been sufficient to satisfy [him] that the defendant was acting knowingly and voluntarily waiving his rights in offering the plea and in admitting the existence of the facts necessary to support his conviction on the charge(s) as stated in the indictments."

2. The crucial consideration in a plea revocation hearing is whether the plea was made voluntarily with a complete understanding of the charges. *McCarthy* v. *United States*, 394 U.S. 459, 464-465 (1969). *Boykin* v. *Alabama, supra. Brady* v. *United States*, 397 U.S. 742, 748 (1970). To assure this goal, a judge should not accept a guilty plea unless he is satisfied that the plea is voluntary and that the defendant understands the nature of the charges. *Mack* v. *United States*, 635 F.2d 20, 23 (1st Cir. 1980), *S.C.*, 669 F.2d 28 (1st Cir. 1982).

If a plea is made the subject of a collateral attack — as the defendant has done here — the Commonwealth may be required to establish that the contemporaneous record of the plea meets minimal requirements of voluntariness and understanding.[7] *Boykin* v. *Alabama, supra. Commonwealth* v. *Foster*, 368 Mass. 100, 103, 107-108 (1975). The term "contemporaneous record" includes "not only the proceedings on acceptance of the plea, but the record of trial, if there was one, preceding the plea, so far as that record may have any substantial bearing on the question whether the defendant made the plea willingly and intelligently." *Commonwealth* v. *Foster*, 368 Mass. at 108

---

[7] We reject the defendant's argument that the judge shifted to him the burden of proving that his guilty pleas to the armed robbery and firearm charges were constitutionally infirm. We are satisfied from what was said and produced at the hearing on the motion (legal briefs of counsel, etc.), and from the judge's discussion of the issues in his memorandum, that he was aware of the fact that, once a defendant has shown a basis for challenging his pleas, the Commonwealth has the burden of establishing that the pleas are constitutionally acceptable.

n.6. If that record is unavailable, for whatever reason, it can be reconstructed. *Ibid. Commonwealth* v. *Harris,* 376 Mass. 74, 77-78 (1978). *Commonwealth* v. *McWhinney,* 20 Mass. App. Ct. 444, 445 (1985). Reconstruction may involve testimony by witnesses, see *Commonwealth* v. *Reid,* 8 Mass. App. Ct. 888 (1979), or other suitable proof of "what occurred in court when the plea was made." *Commonwealth* v. *Foster,* 368 Mass. at 108 n.6.

Here, there is no opportunity to reproduce a stenographic record of the court proceedings when the pleas were made because the court reporter's notes appear to have been destroyed in accordance with Supreme Judicial Court Rule 1:12, 382 Mass. 717 (1981).[8] The defendant claims that there is a complete

---

[8] This rule was adopted pursuant to G. L. c. 221, § 27A, as appearing in St. 1939, c. 157, § 3, which permits the destruction of "obsolete and useless papers." The rule pertains to the disposal of stenographic notes of testimony and reads as follows:

"Stenographic notes of testimony made in any court of the Commonwealth in accordance with any provisions of law may be destroyed by the lawful custodian thereof after the expiration of six years from the date when such notes were taken; provided, however, that this rule shall not apply to notes of which a transcript shall have been ordered and not completed, or to notes as to which the court in which they were taken shall otherwise order."

No one appears to have ordered a transcript of the stenographic notes of the pleas in this case, and no court order had been entered to preserve the notes.

In *Commonwealth* v. *Duquette,* 386 Mass. 834 (1982), a case dealing with a defendant's admissions in a District Court to sufficient facts to warrant findings of guilty, the Supreme Judicial Court noted that the erasure of the tape recording containing the admissions, which was done pursuant to a District Court rule (see 386 Mass. 836 n.3), did not relieve the Commonwealth of its burden of establishing that the admissions were voluntarily and intelligently made. *Id.* at 841-843. The *Duquette* decision may have relevance to the Commonwealth's reliance in future cases on Supreme Judicial Court Rule 1:12 to counter a motion to withdraw pleas made by a defendant long after pleas have been accepted. The present case does not present the question of what should be done when stenographic notes of a plea have been destroyed pursuant to rule 1:12, when those involved in the plea (lawyers and judge) are unavailable, and when the Commonwealth represents that it cannot reconstruct the record and cannot try the defendant because witnesses are no longer available. See the approaches taken in *Oksanen* v. *United States,* 362 F.2d 74 (8th Cir. 1966); *United States* v.

absence of a contemporaneous record. As a consequence, he maintains that he must prevail on the point he presses with respect to voluntariness of the pleas — that he never harbored the state of mind necessary to participate in an armed robbery, intending only to participate in a larceny.[9]

A guilty plea is voluntary and intelligent, "if the record shows affirmatively, see *Commonwealth* v. *Foster*, 368 Mass. [at 102], either: (1) an explanation by the judge of the elements of the crime; or (2) a representation that counsel has explained to the defendant the elements he admits by his plea; or (3) defendant's statements admitting facts constituting the unexplained elements. *Commonwealth* v. *McGuirk*, 376 Mass. 338, 343-344 (1978), cert. denied, 439 U.S. 1120 (1979). See *Commonwealth* v. *Begin*, 394 Mass. 192, 197 (1985)." *Commonwealth* v. *Colantoni*, 396 Mass. 672, 679 (1986). Contrary to the defendant's assertion, the judge has furnished us with information on what most likely occurred during the pleas. That information is contained in the judge's memorandum and is in the nature of findings of fact. The memorandum indicates that the judge would not have accepted a plea from any defendant who appeared before him unless: (a) there had been factual support demonstrated for the charges, usually in the form of a recital of facts by a police officer with the defendant's expressing his agreement to those facts;[10] (b) he (the judge) had provided an explanation, in lay terms, of the elements of the charges; and (c) the defendant had affirmatively stated that he understood the charges and his right to insist on a trial. The

---

*Darnell,* 716 F.2d 479 (7th Cir. 1983), cert. denied, 465 U.S. 1083, reh'g denied, 466 U.S. 946 (1984); *Black* v. *Coombe,* 506 F. Supp. 626 (S.D.N.Y. 1981), aff'd, 672 F.2d 899 (2d Cir. 1981); *United States* v. *Borom,* 646 F. Supp. 1104 (E.D. Wis. 1986).

[9] On appeal, the defendant attempts to raise other issues in connection with the voluntariness and intelligence of his pleas, but the issues were not raised in his affidavits nor discussed in any detail at the hearing on the motion. We do not consider them.

[10] The police reports establish that two men committed an armed robbery in the supermarket and that a third person acted as a lookout and the driver of the getaway car. They also describe the chase of the getaway car and the shots fired from it at the police cruiser..

judge also found that he would not have engaged in plea bargaining and that his questioning would have been sufficient to satisfy him that the defendant was acting knowingly and voluntarily in admitting facts necessary to support convictions.[11]

We need not decide whether the pleas can be sustained solely on the general findings of the judge described above because there is more to the case. The defendant's testimony under oath at Stewart's trial constituted a confession to his active participation in the armed robbery and also established guilt on the charge of unlawfully carrying a firearm. The key to that testimony for present purposes is not the description of the role played by the parties. The importance of the testimony lies in the defendant's acknowledgement of his participation in an armed robbery. To the extent that the testimony disclosed the defendant's actual state of mind it could be considered as binding. See *Commonwealth* v. *Costello*, 120 Mass. 358, 364, 369, *S.C.*, 121 Mass. 371 (1876); *Motta* v. *Mello*, 338 Mass. 170, 172 (1958); *Hultberg* v. *Truex*, 344 Mass. 414, 418 (1962); *Davidonis* v. *Levielle*, 356 Mass. 716 (1969). See also note 4, *supra*, and compare *Commonwealth* v. *Colantoni*, 396 Mass. at 681-682 (where a defendant's affirmative response during plea proceedings to the clerk's reading of the particulars of an indictment charging him with assault and battery with a dangerous weapon was held sufficient to establish the fact that the defendant was armed during the commission of the crimes to which he offered guilty pleas). If a summary of that testimony had been made for the defendant at his plea proceedings, and had been agreed to by him, it would have constituted a sufficient factual basis to support the pleas. We do not view the requirement of a contemporaneous record stated in *Commonwealth* v. *Foster*, 368 Mass. at 103-106, as foreclosing reliance on the defendant's testimony at Stewart's trial to sustain the

---

[11] The judge further indicated at the hearing that he did not entertain pleas pursuant to the rule in *North Carolina* v. *Alford*, 400 U.S. 25 (1970). He emphasized at the hearing that it was his "regular and routine practice" not to accept a plea unless he was satisfied that the defendant "did commit the crime" and that that admission had to be obtained "from the man himself."

pleas.[12] We also note that the defendant's affidavits do not convincingly demonstrate that his sixteen-year delay in bringing the motion is excusable.[13] Nor do the affidavits suggest that the defendant was unaware of the grounds for potential relief.[14] We hold that the Commonwealth has established that the defendant's pleas to the indictments charging him with armed robbery and unlawfully carrying a firearm were volun-

---

[12] The judge stated that he would not "summarize the defendant's averments in his motion for a new trial, or in his testimony in the trial of Frank Stewart, or in his affidavit giving reasons for his statements at that trial . . . ." because, in the judge's view, the defendant "is, or was not truthful in any of the foregoing." In sustaining the pleas, the judge chose to rely upon the manner in which he usually conducted a plea hearing. We recognize that weight and import of affidavits submitted in connection with a motion for new trial is for the judge's discretion. See *Commonwealth* v. *Thomas,* 399 Mass. 165, 167 (1987). For that reason, we reject the defendant's affidavits. However, in the special circumstances of this case, we think we can properly look to the defendant's testimony at Stewart's trial in deciding whether there is an adequate record on which to validate the pleas. That testimony, of course, is not an affidavit, and the effect to be given it presents, on this record, primarily a question of law. We have concluded that the testimony constitutes an admission by the defendant of his involvement in the crimes which, together with the judge's findings, is sufficient to sustain his pleas.

[13] The present motion may be motivated by the defendant's status in Florida. According to a motion filed by his present counsel for expedited argument of the appeal, the defendant has been convicted of first degree murder in Florida and has been sentenced to death. In a separate sentencing trial in connection with the murder conviction, a jury in Florida recommended (by a vote of seven to five) that the death penalty be imposed. A factor in that decision, according to counsel's affidavit, is whether the defendant has been previously convicted of another capital felony or of a felony involving the use or threat of violence to a person.

[14] On this point, we refer to the defendant's fifteen page criminal record. Although that record shows no guilty pleas prior to the pleas in issue in this case, it does show numerous court appearances prior to January 13, 1971, and the disposition of twenty other complaints and indictments on January 18, 1971, the day the defendant was sentenced on these convictions. We can infer that the twenty complaints and indictments were brought forward and made part of the proceedings in these cases. We also note that, on March 14, 1978, and October 10, 1978, the defendant was sentenced on additional felony convictions. Based on this considerable criminal experience, we can infer that the defendant had a basis for knowing of any reason to challenge the validity of the pleas in this case long before 1987.

tarily made and based on intelligent admissions of guilt. See *Commonwealth* v. *Colantoni*, 396 Mass. at 679, and cases cited.

3. On the ineffective assistance of counsel claim, the defendant had the obligation to show the existence and the precise character of the alleged conflict of interest on his counsel's part. See *Commonwealth* v. *Goldman*, 12 Mass. App. Ct. 699, 706 (1981), and cases cited. A conflict of interest will not be inferred simply from the existence of joint representation. *Commonwealth* v. *Davis*, 376 Mass. 777, 781 (1978). We agree with the judge that the requisite showing has not been made here.

4. The judge did not commit an abuse of discretion in denying the defendant's motion to be brought from Florida to testify at the hearing on the motion. See *Commonwealth* v. *Coggins*, 324 Mass. 552, 556-557, cert. denied, 338 U.S. 881 (1949); *Commonwealth* v. *Stewart*, 383 Mass. 253, 259-260 (1981); *Commonwealth* v. *Crowe*, 21 Mass. App. Ct. 456, 486-487, cert. denied sub nom. *Pirrotta* v. *Massachusetts*, 479 U.S. 838 (1986). The defendant made no request to have his deposition taken. See Mass.R.Crim.P. 35, 378 Mass. 906 (1979).

5. Insofar as the judge's order denies the defendant's motion to withdraw the plea of guilty on indictment no. 87764 (armed assault with intent to murder) it is vacated, and a new order is to enter allowing the motion as to that indictment. Insofar as the judge's order denies the defendant's motion to withdraw the pleas of guilty to indictment no. 87762 (armed robbery) and indictment no. 87763 (unlawfully carrying a firearm), it is affirmed.

*So ordered.*