COMMONWEALTH *vs.* LLOYD PAUL DUEST.

No. 90-P-568.

Middlesex. December 17, 1990. - June 4, 1991.

Present: ARMSTRONG, FINE, & LAURENCE, JJ.

*Practice, Criminal*, New trial, Postconviction relief, Judicial discretion, Plea.

A judge properly denied a criminal defendant's second motion for a new trial on the basis that the evidence offered in support of the motion was not "newly discovered" [627-628]; moreover, the judge properly declined, in the circumstances, to exercise his discretion to rehear the defendant's claims for relief [628-630].

The record of a proceeding on a criminal defendant's motion for a new trial did not demonstrate that the denial of the motion, unless reversed, would result in manifest injustice, where there was no showing that if the motion had been entertained on its merits it would have been allowed. [630-631]

There was no merit to certain claims of a criminal defendant with respect to his second motion for new trial, where the issues raised had been determined adversely to him on appeal from the denial of his first motion for a new trial. [631]

INDICTMENT found and returned in the Superior Court on April 10, 1970.

Following the decision of this court in 26 Mass. App. Ct. 137 (1988), a motion for leave to withdraw a plea of guilty and for a new trial was heard by *James F. McHugh, III,* J.

*Andrew Silverman,* Committee for Public Counsel Services, for the defendant.

*Catherine E. Sullivan,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendant appeals from an order denying his second motion that he be permitted to withdraw a guilty plea to an indictment for armed robbery. The plea was taken in 1971. The defendant has since been convicted of

first degree murder in Florida and has been sentenced to death. See *Duest* v. *State*, 462 So. 2d 446 (Fla. 1985). The evidence in the Florida trial was to the effect that the defendant's avocation was "rolling gay guys" (*id.*) and that, on the night in question, he had left a gay bar with the victim in the victim's automobile, had stabbed the victim eleven times in the victim's apartment, and was found shortly thereafter driving the victim's car alone, with blood stains on his clothing and with the victim's missing jewelry box. *Ibid.*

The death penalty is imposed in Florida, after an advisory jury recommendation,[1] where the judge finds the existence of one or more "aggravating circumstances," not outweighed by "mitigating circumstances." Fla. Stat. § 921.141(5), (6) (Supp. 1990). The jury recommended death, and the judge found that five of the statute's aggravating circumstances applied to the defendant, which, because of the factual overlap of two such circumstances,[2] he counted as four in all, with no offsetting mitigating circumstances. One of the aggravating circumstances was the defendant's prior conviction of "a felony involving the use of threat of violence to the person," Fla. Stat. § 921.141(5)(b), the evidence of which was the defendant's prior convictions in Massachusetts, in 1971, of armed robbery and armed assault with intent to murder.

The Supreme Court of Florida affirmed the conviction and the sentence on direct appeal, sustaining the trial judge's findings of two of the four aggravating circumstances (the

___

[1]The advisory recommendation is not binding on the judge, Fla. Stat. § 921.141(3) (Supp. 1990); but, where the advisory jury recommends leniency, the judge is normally required to follow that recommendation where it has a rational basis in the mitigating factors listed in the statute, *Burch* v. *State*, 522 So. 2d 810 (Fla. 1988), "unless the facts justifying a death sentence are so clear and convincing that virtually no reasonable person could differ." *Tedder* v. *State*, 322 So. 2d 908, 910 (Fla. 1976).

[2]The murder was committed in the course of a robbery (Fla. Stat. § 921.141[5][d]) and for pecuniary gain (Fla. Stat. § 921.141[5][f]). Counting those two as one, the judge found, in addition to the aggravating circumstance discussed in the text, that the murder was especially heinous, atrocious, or cruel (Fla. Stat. § 921.141[5][h]) and that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (Fla. Stat. § 921.141[5][i]). 462 So. 2d at 449.

other two, including one concerning the Massachusetts convictions, were not then challenged), and stating that, on the facts of "the instant case, even if we were to find that one or two of the aggravating circumstances found by the trial judge [were] inapplicable, it would still be appropriate to maintain the death penalty." 462 So. 2d at 450.

Despite that portent, the defendant then attempted to undo the two Massachusetts convictions, by that time almost seventeen years old and long since served. Those convictions were based on guilty pleas, and the Commonwealth's burden of showing that the pleas were entered understandingly and voluntarily (see *Commonwealth* v. *Morrow*, 363 Mass. 601, 603 [1973]; *Commonwealth* v. *Duquette*, 386 Mass. 834, 841 [1982]) was hampered by the loss or destruction of the stenographic notes that were made of the plea hearing (no transcript had been prepared). A record can be reconstructed (see *Commonwealth* v. *Foster*, 368 Mass. 100, 108 n.6 [1975]), however, and it was in this case possible to reconstruct a record of the 1971 proceedings through the findings of the judge who accepted the guilty pleas concerning his standard procedure at that time in accepting such pleas, coupled with the defendant's testimony at a roughly contemporaneous (two weeks later) trial of an alleged partner in the armed robbery. (That testimony *had* been stenographically transcribed.) The proceedings on the first motion for a new trial are described in detail in *Commonwealth* v. *Duest*, 26 Mass. App. Ct. 137 (1988) (*Duest I*).

The first motion for a new trial was put on the basis that the defense counsel in 1971 was in a situation of actual conflict of interest by representing simultaneously the defendant and his cousin, Richard Duest. According to the defendant's affidavit, Richard and one Frank Stewart had been the two robbers who went into the supermarket and held the manager at gunpoint, whereas he (the defendant) had remained in the car thinking Richard Duest and Stewart intended to effect a larceny by stealth — not an armed robbery. The second basis was that he had not pleaded knowingly to either charge because his attorney had misexplained the elements,

telling him that his understanding that no force would be used was of no legal relevance either to the armed robbbery charge or the assault with intent to murder, and that the judge had done nothing to correct his resulting misimpressions. The defendant's version of the 1971 plea proceedings was disbelieved by the judge, who described his standard practice as including an itemization of the elements of the charged offenses and as refusing to accept a plea unless he found that the defendant was knowingly and voluntarily acknowledging the factual basis for each offense. Particularly damning was the transcript of the alleged accomplice's trial, which had the defendant testifying under oath that he himself was one of the two robbers who entered the supermarket and emptied the safe with the manager held at gunpoint. That transcript was of significance because it undercut the defendant's 1987 assertion that there was no factual basis for the 1971 armed robbery plea and that the judge would have discovered as much if he had (as he stated was his practice) ensured in the colloguy that the defendant was acknowledging each element.[3] In *Duest I, supra,* this court affirmed the trial judge's order refusing to vacate the armed robbery plea. With the consent of the Commonwealth, however, the guilty plea to assault with intent to murder was vacated, based on the clarification that occurred after 1971 in the judicially accepted definition of the intent element. See *Commonwealth v. Henson,* 394 Mass. 584, 590-592 (1985); *Commonwealth v. Ennis,* 398 Mass. 170, 172-175 (1986); *Duest I,* 26 Mass. App. Ct. at 138-139 n.2.

The decision of this court on the first motion for a new trial was released in June of 1988, and the defendant's application for further appellate review was rejected in October of that year. See 403 Mass. 1102 (1988). On April 20, 1989,

---

[3]Following the hearing on the first motion, but before entry of the judge's findings and order, the defendant furnished a second affidavit in response to the Commonwealth's use of the transcript of his testimony at the alleged accomplice's trial. In it the defendant asserted that that testimony was false and it was the product of duress — threats by a friend of the alleged accomplice. The judge found that the affidavit was not truthful. See *Duest I,* 26 Mass. App. Ct. at 143.

the defendant filed a second motion to withdraw his guilty plea on the armed robbery indictment, supported by an affidavit executed in February (i.e., the defendant's third affidavit, see note 3, *supra*, concerning the proceedings in 1971). The motion purported to be based on "newly discovered evidence," which consisted of the defendant's more detailed recollection of what had taken place at his 1971 plea proceeding. The defendant's recollection, according to his affidavit, had been refreshed by the judge's findings on the previous motion (wherein the judge had stated he had no recollection whatever of what transpired at the 1971 plea proceeding but could only recount his standard method of proceeding), and, in particular, he now recalled two additional facts: first, that his 1971 attorney (who had died before the first motion was filed) had joined with his codefendant (and cousin) Richard Duest to coerce him into pleading guilty, over his objections, and under implied threat of physical harm, in order to win a more lenient sentence for Richard in a "package deal" with the prosecutor; second, that the judge had neglected to ask him whether his guilty plea was the result of threats or coercion or whether he had had satisfactory discussion with his attorney, disappointing the defendant who had been "hoping that the judge would see that my lawyer was not helping me and that I did not really want to plead guilty."

Certain aspects of the third affidavit might strain any judge's credulity — the time elapsed from the submission of the plea, the claim that the defendant, eighteen years old when he pleaded, could now recall questions the judge did *not* ask, the materially different versions of the defendant's conversation with his attorney between the first and second affidavits (which had the attorney misdescribing the intent elements of both offenses) and the third affidavit (which had the attorney using coercion to obtain the defendant's guilty plea) — but the judge did not directly reach the question of the defendant's credibility. Instead, he put his denial of the motion on the basis that the evidence offered in support of the motion was not, in fact, "newly discovered," in the sense that it was "unknown and unavailable at the time of the

[first motion] despite the diligence of the moving party." *Commonwealth* v. *Williams*, 399 Mass. 60, 64 (1987). The judge did not err by so ruling. See *Bond* v. *Cutler*, 7 Mass. 205, 207 (1810)("[A] want of recollection of a fact, which, by due attention might have been remembered, cannot be a reasonable ground for granting a new trial. For a want of recollection may always be pretended, and may be hard to be disproved."). Modern cases are to the same effect. "[R]ecollection after a trial is concluded does not constitute newly discovered evidence because by its general nature it deals with the known while discovery deals with the unknown. Information within the personal knowledge of a defendant does not become newly discovered evidence by reason of later recollection." *State* v. *Sims*, 99 Ariz. 302, 310-311 (1965), citing *State* v. *Daymus*, 93 Ariz. 332, 334 (1963). "[I]t must be taken as firmly established in this jurisdiction that facts or evidence not introduced or otherwise made use of at trial because they were forgotten until after the trial do not constitute newly discovered evidence because of which a new trial may be granted." *LaVigne* v. *Commonwealth*, 353 S.W.2d 376, 378 (Ky. 1962). "The evidence relied upon in appellee's motion [for relief from judgment] . . . was not evidence 'newly discovered,' rather it was 'forgotten evidence newly remembered,' and as such would not support an order granting relief. . . ." *Kash N'Karry Wholesale Supermkts., Inc.* v. *Garcia*, 221 So. 2d 786, 788 (Fla. Dist. Ct. App. 1969). For other examples, see *Lewis* v. *State*, 367 So. 2d 542, 546 (Ala. Crim. App. 1978); *Crites* v. *Photometric Prod. Corp.*, 20 Del. Ch. 10, 16-18 (1933); *State* v. *Pittman*, 221 S.W. 2d 163, 164-165 (Mo. 1949); *State* v. *Sonnenschein*, 37 S.D. 139, 148-149 (1916)("a case, not of newly discovered evidence, but, at best, of newly recalled evidence").

The defendant was thus bound, as the judge concluded, by the usual rule, Mass.R.Crim.P. 30(c)(2), 378 Mass. 901 (1979), that "[a]ll grounds for relief claimed by a defendant [in a motion for postconviction relief] shall be raised by the defendant in his original or amended motion. Any grounds

not so raised are waived unless the judge in his discretion permits them to be raised in a subsequent motion, or unless such grounds could not reasonably have been raised in the original or amended motion." Reliance on this rule was appropriate. See *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 229 (1973); *Commonwealth* v. *Deeran*, 397 Mass. 136, 139 (1986); *Commonwealth* v. *Watson*, 409 Mass. 110, 112 (1991); *Commonwealth* v. *Hopkins*, 18 Mass. App. Ct. 982, 983-984 (1984). "While a judge does have the discretion to rehear such questions, [the Supreme Judicial Court] has recommended restricting the exercise of that power to 'those extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result.'" *Fogarty* v. *Commonwealth*, 406 Mass. 103, 107-108 (1989), quoting from *Commonwealth* v. *Harrington*, 379 Mass. 446, 449 (1980). The judge could properly conclude that this is *not* such a case, where the defendant waited seventeen years to challenge his conviction, where the defendant's contemporary testimony under oath put him as an active participant in the robbery, and where even his present version puts him as the driver of the robbers' getaway car from which shots were being fired at pursuing officers.

The defendant argues that this case must be treated exceptionally because of the pending Florida sentence: that "death is different," *Ford* v. *Wainwright*, 477 U.S. 399, 411 (1986), and that "[i]n capital proceedings generally, th[e United States Supreme] Court has demanded that factfinding procedures aspire to a heightened standard of reliability." *Ibid.* But the armed robbery indictment was not a capital charge, and the defendant is not entitled to have the court treat his motion for a new trial differently from others because of his subsequent involvement in a capital proceeding in another State. It seems, moreover, that the Florida sentence does not depend on the defendant's armed robbery conviction in Massachusetts,[4] and it now seems clear, if it did not when the

---

[4] After the defendant's guilty plea to assault with intent to murder was vacated, a petition for postconviction relief from the Florida sentence was denied, the court pointing out: "Finally, it should be noted that there were

defendant's brief was written, that the United States Supreme Court does not require that courts set aside, in death penalty cases, rules that limit repetitious postconviction attacks on criminal judgments. See *McCleskey v. Zant*, 111 S. Ct. 1454, 1467-1471 (1991).

It has frequently been said that "the action of the judge upon a motion for a new trial on the ground of newly discovered evidence commonly rests upon the exercise of sound judicial discretion and that his decision ordinarily cannot be revised [on appeal]." *Sharpe, petitioner*, 322 Mass. 441, 444 (1948). "The fundamental test . . . is that the decision of the judge is not to be reversed unless a survey of the whole case shows that his decision, unless reversed, will result in manifest injustice." *Id.* at 445. We see nothing in this record to suggest that, if the defendant's second new trial motion had been entertained on the merits, it would have been allowed. His plea proceeding, unlike that in *Commonwealth v. Fernandes*, 390 Mass. 714, 717-718 (1984), and *Commonwealth v. Dawson*, 19 Mass. App. Ct. 221, 224-225 (1985), would have included, as part of the judge's standard method of proceeding,[5] a colloquy that satisfied the judge that the

---

three other valid aggravating circumstances applicable to Duest's sentence. As we stated in our opinion on direct appeal, 'even if we were to find that one or two of the aggravating circumstances found by the trial judge [were] inapplicable, it would still be appropriate to maintain the death penalty.' *Duest v. State*, 462 So. 2d at 450." *Duest v. Dugger*, 555 So. 2d 849, 851 (Fla. 1990).

[5]The judge's findings concerning his standard procedure included, in part, the following: "I know that it was my policy then, and since, not to accept a plea unless the factual support of the charges were stated to a defendant . . . and the defendant agreed that all matters stated were factual. I would describe the charge, or charges, to him. I would explain in lay terms the elements of charge(s) as alleged in the indictments. I would ascertain to my satisfaction that the offer to plead was voluntary and that the charges and his rights to a trial were fully understood. I did not engage in plea bargaining. If I had indicated to counsel any sentence that I might be inclined to give, I would tell the defendant that I was not bound by it but that I would permit him to withdraw his offer should I be inclined to award a sentence greater than that indicated. *I was well aware of Boykin v. Alabama, 395 U.S. 238 (1969), and I am of the firm belief that I would have complied with the teachings of that case.* I cannot say that I asked all the questions that I would ask at the present time but, I repeat, that in

plea was tendered not only "intelligently" (i.e., with knowledge of the elements of the charges against him and with knowledge of the procedural protections that he would forgo by pleading guilty) but "voluntarily" — a concept that is distinct from "intelligently" (compare *Commonwealth* v. *Fernandes, supra* at 719) and imports nothing if not freedom from coercion, duress, or improper inducements. See *Brady* v. *United States*, 397 U.S. 742, 750, 755 (1970). The necessity that a guilty plea be "voluntary" in this primary sense was stated in Massachusetts decisions at least as early as *Green* v. *Commonwealth*, 12 Allen 155, 176 (1866). The *Fernandes* decision does not mandate the use of particular language. See the warnings against "prearranged script[s]" in *Commonwealth* v. *Morrow*, 363 Mass. at 605, *Commonwealth* v. *Foster*, 368 Mass. at 107, *Commonwealth* v. *Colantoni*, 396 Mass. 672, 677-678 (1986), and *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. 491, 502 (1985). The object is simply "to uncover whether a defendant [is] pleading guilty under some undue pressure." *Commonwealth* v. *Crowell*, 403 Mass. 381, 388 (1988).

There is nothing to the defendant's contention that the judge was required to conduct a testimonial hearing. That point was disposed of in *Duest I*, 26 Mass. App. Ct. at 149. The conflict of interest point, while embellished in the third affidavit, is not fundamentally different from that presented on the first motion for a new trial. It was dealt with briefly at that time, see *id.* at 149; and, to the extent that the third affidavit presents the alleged conflict more vividly, the judge would not be required to accept its allegations as truthful.

> *Order denying motion for new trial affirmed.*

---

my belief the questions I asked would have been sufficient to satisfy me that the defendant was acting knowingly and voluntarily waiving his rights in offering the plea and in admitting the existence of the facts necessary to support his conviction on the charge(s) as stated in the indictments" (emphasis added).