## COMMONWEALTH *vs*. PAUL A. DeCOLOGERO.

No. 98-P-1887.

Middlesex. February 16, 2000. - April 10, 2000.

Present: BROWN, PORADA, & BECK, JJ.

*Practice, Criminal,* Plea, Postconviction relief. *Constitutional Law,* Plea. *Due Process of Law,* Plea.

The record of the tender of a guilty plea demonstrated that the defendant's proffer was voluntarily made [94-95], and that the judge adequately informed the defendant of the rights he was giving up by pleading guilty [95].

There was no merit to a criminal defendant's claim that the Commonwealth misrepresented the effect of the sentence it recommended at the time the defendant pleaded guilty. [95-96]

The record of the tender of a guilty plea to a charge of trafficking in cocaine in violation of G. L. c. 94C, § 32E(*b*), demonstrated that the defendant's proffer was intelligently made [96-97]; however, with respect to the defendant's plea to conspiracy to traffic in cocaine, the record was insufficient to establish that it was intelligently made, and the defendant's motion to withdraw that plea should have been allowed [97-98].

INDICTMENTS found and returned in the Superior Court Department on May 16, 1983.

Guilty pleas were accepted by *John T. Ronan*, J., and a motion to withdraw the guilty pleas, filed on August 14, 1997, was considered by *Robert A. Barton*, J., and heard by *Judith A. Cowin*, J.

*Sarah D. Corrigan* for the defendant.

*Loretta M. Lillios*, Assistant District Attorney, for the Commonwealth.

BROWN, J. In 1984, the defendant pleaded guilty to trafficking in more than twenty-eight but less than one hundred grams of cocaine[1] (G. L. c. 94C, § 32E[*b*], as appearing in St. 1982,

---

[1]The charge was reduced from trafficking in excess of 200 grams of cocaine at the plea hearing.

c. 650, § 11) and to conspiracy to traffic in the same amount of cocaine (G. L. c. 94C, § 40). He was sentenced, pursuant to an agreed-upon recommendation, to serve not less than ten nor more than twelve years in prison. In 1997, due to his vulnerability to an enhanced Federal sentence, the defendant filed a motion to withdraw his guilty pleas. After procedural meanderings, two justices of the Superior Court, on separate occasions, denied the defendant's motion. The defendant appeals, claiming that his guilty pleas were not made intelligently and voluntarily and that the Commonwealth misrepresented the advantages it would provide him in connection with his guilty pleas.[2]

When a defendant pleads guilty, "[t]he judge must determine by means of an adequate colloquy that the plea tendered is both intelligently and voluntarily made." *Commonwealth* v. *Correa*, 43 Mass. App. Ct. 714, 717 (1997). We address separately the "voluntariness" and "intelligently made" aspects of the defendant's guilty pleas.

1. "The concept of voluntariness . . . requires that the defendant tender the plea free 'from coercion, duress, or improper inducements.' " *Commonwealth* v. *Correa*, 43 Mass. App. Ct. at 717, quoting from *Commonwealth* v. *Duest*, 30 Mass. App. Ct. 623, 631 (1991). See *Commonwealth* v. *Fernandes*, 390 Mass. 714, 715 (1984) (guilty plea valid only if offered "voluntarily, with sufficient awareness of the relevant circumstances"). The defendant, citing *Commonwealth* v. *Dawson*, 19 Mass. App. Ct. 221 (1985), claims that the judge's failure to inquire into the voluntariness of the plea served to invalidate the plea. The defendant's reliance on *Dawson* is misplaced. In that case, the trial judge, who took the defendant's plea, made *no* inquiry regarding whether the plea was made voluntarily. See *id.* at 225-227. By contrast, here, voluntariness may be inferred from the extensive discussions at the plea hearing regarding the favorable sentencing consequences which the defendant would receive, including an amendment to the indictments which had the effect of reducing the defendant's mandatory minimum sentence by approximately six years. See *Com-*

---

[2]It is well understood that "[t]he appropriate vehicle for attacking the validity of a guilty plea is a motion for a new trial. *Commonwealth* v. *DeMarco*, 387 Mass. 481, 482 (1982). A trial judge upon written motion may grant a new trial if it appears that justice may not have been done." *Commonwealth* v. *Clerico*, 35 Mass. App. Ct. 407, 411 (1993). See Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979).

*monwealth* v. *Russell*, 37 Mass. App. Ct. 152, 157 (1994), cert. denied, 513 U.S. 1094 (1995) (in absence of allegation that plea was the product of coercion or threats, the judge may infer voluntariness from the circumstances, including the defendant's awareness of favorable consequences of his plea). See also *Commonwealth* v. *Correa*, 43 Mass. App. Ct. at 719 (where lack of voluntariness not specifically claimed, the judge may infer voluntariness from the favorable sentencing consequences of the defendant's plea). The judge's failure to ask the defendant specifically whether he was pleading "freely, willingly, and voluntarily" is not critical here, especially in light of the repeated opportunities the judge gave the defendant to express any concerns or lack of understanding. See *Commonwealth* v. *Quinones*, 414 Mass. 423, 434 (1993) ("The question whether a defendant was subject to undue pressure to plead guilty must be considered in some manner on the record. . . . No particular form of words need be used in the required inquiry of a defendant").

2. The defendant also claims that the judge failed to inform him of the intra-trial rights he was giving up by pleading guilty. The defendant is incorrect, as the transcript reveals that the judge did inform the defendant that he gave up his right to a trial, his right against self-incrimination, and his right to confront the evidence against him. While the judge did not specify that the defendant was entitled to cross-examine witnesses against him, the judge did tell the defendant that he was surrendering the right to "confront [the evidence against him]. You can attempt to meet it, dispute it in any possible way." In any event, the defendant has made no claim that this phrasing by the judge had any effect on his decision to plead guilty. See *Commonwealth* v. *Correa*, 43 Mass. App. Ct. at 718 (where defendant's collateral attack on guilty plea is based on omissions in colloquy relating to defendant's intra-trial rights, defendant must show that alleged omission made a difference in decision to plead guilty).

3. (a) The defendant next claims that the Commonwealth misrepresented the advantages it would provide the defendant in terms of sentencing. This claim is without merit, as the defendant misreads the transcript. The prosecutor did not say that it was the Commonwealth's intention that the defendant serve "no more than forty months" of his sentence. Rather, the prosecutor, referring to the fact that he wanted the defendant's

recently imposed Federal sentence to run after, and not concurrently with, the State sentence, stated, "[O]ur intent is that [the defendant] do *more* than the forty months he is going to do on [the State sentence]" (emphasis supplied). Further, we note that neither the prosecutor nor the judge has the authority to guarantee a defendant a specific parole date. See *Commonwealth* v. *Amirault*, 415 Mass. 112, 116-117 (1993). The defendant cannot plausibly claim ignorance of this fact, given the statement by his codefendant's attorney to the judge near the end of the plea proceeding that, "I know that you cannot control what the Parole Commission does. Even my brother can't control that."[3]

(b) Additionally, the defendant misreads a statement of the prosecutor, interpreting it to mean that the Commonwealth would file a motion to revise and revoke the defendant's sentence if the defendant served more than forty months of his sentence. Apart from the fact that a prosecutor has no such authority, see Mass.R.Crim.P. 29(a), 378 Mass. 899 (1979); *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 269, cert. denied, 459 U.S. 864 (1982), and that after the contemplated lapse of forty months a motion to revise and revoke would not have been available to any party, the actual statement made by the prosecutor — that, "[s]hould something else happen," he "would have no compulsion to file a motion to revise and revoke" — in context meant, should difficulties arise coordinating the defendant's State sentence with his Federal sentence, he would not be opposed to filing a motion to revise and revoke.[4] His statement had nothing to do with the length of time the defendant would serve in State prison.

4. The defendant claims that his plea was not intelligently made because he was not given notice of the factual allegations against him and was not informed of the elements of the crimes

[3]Counsel for the codefendant did state that he understood it to be the prosecution's intent that the defendant and codefendant serve no more than forty months of their State sentences. However, whatever the relevance of this subjective expectation may have been, it was eliminated by counsel's further statement that he knew that neither the prosecutor nor the judge could control when the defendant and codefendant would be granted parole.

[4]Although the prosecutor stated that he would have "no compulsion" to file a motion to revise and revoke, the tenor of the transcript indicates that he may have intended to say that he would not be averse to doing so. Whatever the case, the prosecutor was not referring to filing such a motion in the event the defendant served more than forty months on his State sentence. Thus, whatever the prosecutor's intended language, the defendant's claim fails.

to which he was pleading guilty. Of course, in addition to being voluntary, a guilty plea must also be made intelligently. In order for a guilty plea to be deemed intelligently made, "[t]here must be an explanation by the judge or defense counsel of the elements of the crimes charged or an admission by the defendant to the facts constituting those crimes." *Commonwealth* v. *Correa*, 43 Mass. App. Ct. at 717.

Here, there is adequate evidence that the defendant understood the crime of trafficking in cocaine. First, the defendant was repeatedly informed that he was pleading guilty to trafficking in cocaine. The judge explained to the defendant that the Commonwealth was required to prove beyond a reasonable doubt that he was "trafficking in this case as it now stands, trafficking in cocaine; that you were marketing in it; and there were more than twenty-eight grams and less than a hundred . . . ." While the judge did not specifically explain the elements of "knowingly or intentionally manufacturing, distributing, or dispensing or possessing with intent to manufacture, distribute, or dispense," G. L. c. 94C, § 32E(*b*), his use of the term "marketing," along with his statement as to the amount the Commonwealth would be required to prove, tended to make the charge self-explanatory. See *Commonwealth* v. *Wiswall*, 43 Mass. App. Ct. 722, 723 (1997). Contrast *Commonwealth* v. *Pixley*, 48 Mass. App. Ct. 917, 918 (2000).

Additionally, the prosecutor recited a lengthy narrative of the evidence against the defendant, which encompassed all of the elements the Commonwealth was required to prove. Although it is true that the defendant never explicitly admitted to these facts, he nonetheless listened to them and subsequently chose to plead guilty. Compare *Commonwealth* v. *Huot*, 380 Mass. 403, 409-410 (1980) (evidence that defendant understood substance of charge against him, remembered enough facts to know he was responsible and, even if he did not remember committing crime, "he had heard the prosecution's case, and, in light of it, chose to plead guilty"). The repeated recitation of the charge, the judge's explanation of the crime, and the prosecution's narrative establish that the defendant's decision to plead guilty to trafficking in cocaine was made intelligently.

5. More troubling is the defendant's guilty plea to conspiracy to traffic in cocaine. With respect to that indictment, the judge never explained what the Commonwealth needed to prove, and there is nothing to indicate whether defense counsel explained

the elements to the defendant. Moreover, the offense, as read at the plea hearing, spoke only of "conspiracy," without reference to the underlying substantive crime. Therefore, that offense did not become self-explanatory. See *Commonwealth* v. *Pixley*, 48 Mass. App. Ct. at 918. Contrast *Commonwealth* v. *Wiswall*, 43 Mass. App. Ct. at 723. The only remaining means by which the Commonwealth could have established the defendant's knowledge of the elements of the crime with which he was charged would have been through the prosecutor's recitation of the facts. However, as we have stated, the defendant never explicitly admitted that these facts were accurate. The recitation, standing alone, is insufficient to establish that the defendant's guilty plea to conspiracy to traffic in cocaine was intelligently made.

On the indictment charging trafficking in cocaine, the order denying the defendant's motion to withdraw his guilty plea is affirmed. On the indictment charging conspiracy to traffic in cocaine, the order denying the motion to withdraw the guilty plea is reversed, and the judgment is reversed and the finding set aside.

*So ordered.*